HAMILTON v. THE RICH HILL COAL MINING COMPANY, *Appellant.*

DIVISION ONE.

1. **Practice:** EVIDENCE: HARMLESS ERROR. Error on the part of the trial court in sustaining an objection to a witness' testimony on a certain matter is harmless, where the witness is afterwards fully interrogated as to the same matter.

2. **Negligence:** EVIDENCE: BLOCKING RAILROAD RAILS. Witnesses introduced in a personal injury case for the purpose of showing a coal company's negligence in not blocking its railroad switch rails, may, to show their experience as railroad men, testify that switches were blocked before and after the accident in certain railroad yards where they worked.

3. ———: ———: ———. Nor is it a valid objection to their testimony that they acquired their experience from work at ordinary railroad yards and not at switch tracks about coal shafts.

Hamilton v. The Rich Hill Mining Co.

4. ———: COAL COMPANY RUNNING RAILROAD. Where coal companies undertake to run railroads, they are under the same obligation as the latter to have their tracks and switches reasonably safe.

108 364
177 490
177 492

5. ———: QUESTION FOR JURY. Whether or not the defendant's servant was guilty of negligence in standing on the rails of its railroad track in attempting to couple a moving to a stationary car, was a question for the jury.

6. Evidence : IMPEACHING WITNESS, FOUNDATION FOR. Where the defendant's superintendent, on being examined as a witness for defendant, testified that he never gave the plaintiff an order to couple cars, he may, on cross-examination, for the purpose of laying a foundation to impeach his testimony, be asked whether he did not, after the accident, state to plaintiff that he gave the order.

7. Negligence : ALLEGATA ET PROBATA. The averment in a petition in an action for negligence that defendant directed plaintiff to do the act which resulted in his injury, will permit proof that any authorized agent gave the order.

8. ———: SERVANT IN LINE OF DUTY : QUESTION FOR JURY. Whether or not an employe was acting in the line of his duty when injured is, where the evidence is conflicting, a question for the jury.

9. ———: FURNISHING INSTRUMENTALITIES : MASTER'S DUTY TO SERVANT. It is the duty of the master to use all reasonable care and caution in constructing and procuring instrumentalities, machinery and appliances with which the servant is to perform the work required of him.

10. ——— : ——— : ———. The care required must depend upon the danger to be reasonably apprehended from the use of the appliance for the purpose for which it is designed.

11. ———: FAILURE TO BLOCK RAILS. Whether or not a coal company operating switching tracks at its coal mines was negligent in failing to block the rails, is a question for the jury.

12. ———: MASTER AND SERVANT : KNOWLEDGE BY SERVANT OF DEFECTIVE INSTRUMENTALITIES. Mere knowledge by the servant that an appliance is defective, and that risk is incurred in its use, will not, as a matter of law, defeat the servant's action for injury received in using it where the danger is not such as to threaten immediate injury, or, where it is reasonable to suppose that the appliance may be safely used by the exercise of care and caution, and it is generally a question for the jury whether the surrounding circumstances made it contributory negligence for the servant to continue using the appliance.

*Appeal from Bates Circuit Court.*—HON. D. A.
DEARMOND, Judge.

AFFIRMED.

*Thos. J. Smith* and *P. H. Holcomb* for appellant.

(1) The court erred in refusing to permit plaintiff's witness, McAlister, to answer on cross-examination as to whether, upon defendant's theory of the case, the track was a reasonably safe track, since what will be regarded as a reasonably safe track depends upon the character and quality of business done over it, and also the duty required of the servant. *Dayharsh v. Railroad*, 103 Mo. 576. (2) The court erred in permitting the witnesses, Preston and Hickman, to testify as to blocking that was done by Missouri Pacific Railway Company of its track after this accident. Subsequent repairs made by defendant could not be proven, and certainly similar work done by another after the accident could not. *Hipsley v. Railroad*, 88 Mo. 348; *Ely v. Railroad*, 77 Mo. 34. (3) The court erred in permitting the witnesses, Preston and Hickman, to testify as to whether it was safe for employes in yards of railroad companies to do switching where the tracks are not blocked. There is nothing showing that the business at a depot yard was similar to that at this coal shaft; but on the contrary that it was not as testified by witness McAlister. There is no averment in the petition that plaintiff was required to do switching; nor is there any evidence of this fact. Shearman & Redfield on Neg., sec. 6; *Parrott v. Wells*, 15 Wall. 524; 1 Thompson on Neg. 45, 135. (4) Plaintiff's action is based upon an alleged order given to him by John Graham, pit boss, upon the day of accident. Therefore, the cross-examination by plaintiff of defendant's witness, Reavely, as to any other order was immaterial and improper. *Ritter v. Bank*, 87 Mo.

574; 1 Greenl. Ev., sec. 52, p. 71, and sec. 449, p. 575. (5) The instruction in the nature of a demurrer to the plaintiff's evidence asked at the close thereof by defendant should have been given. Plaintiff's own testimony shows he was guilty of negligence, but for which the injury could not have happened. *First.* He admits that he was standing with one foot upon the rails of the track, in front of a loaded car that was approaching him, the rails being then so slick from the rain that it was impossible for him to stop the car with the brakes. *Bell v. Railroad*, 86 Mo. 612; s. c., 72 Mo. 59. *Second.* Plaintiff admits that he did not notice that he was at the point of the switch, but that he knew there was a point along there where his foot was liable to be caught. *Lenix v. Railroad*, 76 Mo. 86; *Powell v. Railroad*, 76 Mo. 80; *Taylor v. Railroad*, 86 Mo. 463; *Buesching v. Gaslight Co.*, 73 Mo. 229; *Melburn v. Railroad*, 86 Mo. 109; *Hudson v. Railroad*, 101 Mo. 30; *Kellney v. Railroad*, 101 Mo. 74; *Yancy v. Railroad*, 93 Mo. 433, and cases cited. (6) Instruction, numbered 1, given on behalf of the plaintiff, is erroneous in that it submits to the jury an issue not raised in the pleading, to-wit, as to whether or not the unblocked switch rail "was at a place where plaintiff, by reason of his employment, was required to work." *Camp v. Heelan*, 43 Mo. 591; *Glass v. Gelvin*, 80 Mo. 279; *Brown v. Railroad*, 80 Mo. 457; *Storm v. White*, 23 Mo. App. 31. (7) It is in conflict in this respect with instruction, numbered 3, given by the court on its own motion. *Goetz v. Railroad*, 50 Mo. 472; *Flori v. St. Louis*, 69 Mo. 341; *Stevenson v. Hancock*, 72 Mo. 614; *Price v. Railroad*, 77 Mo. 512; *Stone v. Hunt*, 94 Mo. 475; *Frederick v. Allgaier*, 88 Mo. 603. (8) This instruction, numbered 1, also assumes as facts that an unsafe and dangerous place between defendant's track rail and switch rail was left unblocked and unprotected, and that there was increased danger to plaintiff on account thereof, which facts are controverted in the

pleadings. *Ins. Co. v. Seminary*, 52 Mo. 480 ; *Peck v. Ritchey*, 66 Mo. 121 ; *Conner v. Taylor*, 82 Mo. 347 ; *Wilkerson v. Thompson*, 82 Mo. 328 ; *Maxwell v. Railroad*, 85 Mo. 104 ; *Dowling v. Allen*, 88 Mo. 296.

*J. T. Burney* and *R. T. Railey* for respondent.

The evidence of the plaintiff tended to show that he was wholly inexperienced, and so notified defendant ; that he hired as a car trimmer, and a few days before the accident was required by defendant to couple cars, after they were loaded and trimmed ; that plaintiff was not only inexperienced in regard to coupling cars, but was likewise ignorant of the danger arising from the unblocked space between defendant's tracks ; that, if such space had been blocked, it would have been safe for plaintiff ; that, where such space was left unblocked, it was unsafe and dangerous for plaintiff, and others who were required to work over and about same ; that plaintiff on the day of the injury was prudently obeying the order of his master—although inexperienced and ignorant of the danger to which he was exposed ; that he was performing his duty as all other brakemen do ; that he could have made the coupling in safety, and have stepped out from between the cars without any injury, had defendant's track been properly blocked ; that he acted as a reasonably prudent man would have acted under the circumstances, and was guilty of no negligence upon his part ; that he sustained his injury by reason of the negligence of defendant in failing to perform a plain duty in regard to blocking its track ; that plaintiff was only thirty-one years of age, in good health, and was rendered a cripple for life. These facts were found by the jury in favor of plaintiff. He presents to this court a meritorious cause of action, and asks that the judgment below should be affirmed. *Mayes v. Railroad*, 8 Am. & Eng. R. R. Cases ( Iowa ), 530 ; *Huhn v. Railroad*, 92 Mo. 440 ; *Soeder v. Railroad*,

100 Mo. 681; *Shortell v. St. Joseph*, 104 Mo. 120; *Stephens v. Railroad*, 96 Mo. 212; *Sullivan v. Railroad*, 17 S. W. Rep. 748.

BLACK, J.—A coal car ran over the plaintiff's leg, crushing it so that it had to be amputated above the knee, and this is a suit to recover damages for the injuries thus sustained. The trial resulted in a verdict and judgment for plaintiff for $8,000.

The defendant owned and operated a spur railroad track, extending from the Missouri Pacific railroad west about one-fourth of a mile to a switch. From this point there were two tracks extending west on a curve and on an up grade some four or five hundred feet to defendant's coal shaft number 6, and thence on to the west. There were no blocks between the rails of these two tracks where they came together at the switch.

The plaintiff was in the employ of the defendant from May 15, 1887, until the twenty-eighth of the following September. Previous to this employment he had been a farmer and had no experience in mining or in handling cars, and this fact was known and understood by defendant's representatives who employed him and under whom he worked. He was employed as a coal trimmer, that is to say, to level up the coal when dropped into the cars, move the cars from the chute when loaded, and move empty cars to the chute. He acted in this capacity as an assistant for a Mr. Cash up to three or four days before the accident. These duties did not require him to couple cars.

Reavely was the superintendent of the mines, and in his absence the men at this shaft were under the direction of Thomas Graham, weigh-master, and John Graham, pit-boss. Three or four days before the accident John Graham directed Cash to go to the pit, leaving the handling of the cars in the hands of the plaintiff. He says John Graham told him to trim the cars and

couple all that he could conveniently, and that this order was repeated on the morning of the day of the accident. He says he loaded one car and let it down the grade so that the rear end stood at or over the switch. He then loaded another car and let it down by applying the brake. Before reaching the car standing at the switch he got off, went forward to the other car, and as the approaching car came up he attempted to couple it to the standing car ; that the heel of his shoe caught in the unblocked rails and threw him down, and the car ran over his leg inflicting the injuries before mentioned.

Reavely and the two Grahams say they did not direct the plaintiff to couple the cars ; that it was the duty of the trainmen to perform this work. The trainmen were also in the employ of the defendant.

There is much evidence to the effect that it is unsafe and dangerous to leave these converging rails unblocked, and there is evidence tending to show that in general they are not blocked at coal mines. There is also evidence to the effect that plaintiff, by reason of his inexperience, did not know that unblocked rails were dangerous. Indeed, there is evidence that he did not know that they were not blocked.

1. On the cross-examination of McAlister, a witness for the plaintiff, the defendant asked a question calling for the opinion of the witness as to whether a track would be reasonably safe, where the switches are not blocked, to an employe not required to couple cars. To this question the court sustained plaintiff's objection. We do not see what such an examination had to do with this case. The plaintiff's case is founded on the averment that it became and was his duty to couple the cars, because he had been directed so to do by the defendant. Whether the track would be safe to one not engaged in coupling cars, though not blocked, was not an issue to be tried. But be this as it may, the witness was subsequently interrogated by defendant to

the fullest extent on this matter. The defendant has, therefore, no ground for complaint, though the court may have improperly sustained the objection as it was asked in the first instance.

2. Preston and Hickman, witnesses for the plaintiff, were called as experienced railroad men to show the necessity and advantage of blocks. Among other things, they testified that tracks had been blocked, before and after this accident, in certain railroad yards where they had worked. To all this evidence the plaintiff objected. This evidence was not offered, as defendant seems to suppose, for the purpose of showing improvements made by other railroad companies since the date of the accident. It was offered to show the extent of the knowledge and experience of the witnesses. The value of their evidence depended much upon their experience in railroad work. Now it was wholly immaterial whether that knowledge and experience was acquired before or after the accident in question, and it was proper to show the extent of their experience. For this purpose the evidence was offered and properly received. Nor is it any valid objection to their evidence that they acquired their experience from work at ordinary railroad yards, and not at switch tracks about coal shafts. The defendant's railroad was constructed and used for the purpose of handling ordinary railroad cars thereon so that it is wholly immaterial where or at what kind of yards or switching grounds these witnesses obtained their knowledge and experience. If coal companies undertake to run railroads they are under the same obligations as railroad companies to see that the tracks and switches are made reasonably safe. The extent and character of the use to which the particular track is put is a matter for the jury to consider, but that does not affect the question in hand.

3. On the cross-examination of McAlister the defendant asked this question: "I will get you to

state whether it is negligence in any person who has business to attend to on a railroad track to be standing upon the rails of a track immediately in front of a moving car?" The court did not err in sustaining the objection thereto. Whether the plaintiff was standing on the rails, and whether that was a proper place for him to stand when about to couple an approaching car, were proper subjects of inquiry; but whether these facts constitute negligence on his part was a question for the jury to decide. The cases cited where persons were standing on the track of a railroad, having no right to be there, have no application to this case. It was for the jury, and not the witness, to determine the ultimate question of contributory negligence.

4. Mr. Reavely, the defendant's superintendent, testified that he never gave plaintiff an order to couple cars, and that he gave no one any authority to make such an order. On cross-examination by plaintiff, he said he had a conversation with plaintiff after the accident, in which plaintiff blamed him for it. Being asked if he did not then say: "John, I did give the order, but I did not mean it to be a permanent order," he said: "I did not." The point made that this cross-examination was error because the plaintiff relied alone upon an order from John Graham directing him to couple the cars is not well taken. The averment of the petition is that the defendant, not Graham, directed him to couple the cars; proof that any authorized agent gave the order would sustain this averment. The witness had testified that he did not order the plaintiff to couple the cars, and the purpose of the cross-examination was to lay a foundation for impeaching his evidence by showing contrary statements made out of court. Such impeaching evidence was produced by the plaintiff later in the case.

5. The trial court gave a number of instructions at the request of the plaintiff, and a number at the request of the defendant as asked and others in a modified

form. These instructions are unnecessarily long, and cover some six or seven pages of the printed record, and numerous objections are lodged against them. It is out of all reason to expect this court to incumber its reports with such matter. We shall, therefore, speak of the controlling issues of fact and law in the case.

From the statement before made it will be seen that there was an issue of fact as to whether it was a part of defendant's work to couple the cars. That this was not a part of his work until three or four days before the accident is conceded on all hands. But there is evidence that the pit boss directed him to couple the cars a few days before and on the day of the accident. And there is evidence that no such order was given. The instructions for the plaintiff required the jury to find that the plaintiff was acting in the line of his duty when injured; and those given at the request of the defendant, or by the court, told the jury that before they could find for the plaintiff they must believe some authorized agent of the defendant directed him to couple the cars. This issue of fact was, therefore, fairly submitted to the jury, and needs no further consideration.

6. That the defendant owned and operated this spur railroad with its attached switches is an admitted fact. It is also conceded in the evidence, and the jury must have found, that the rails of the two tracks were not blocked where they came together at the switch. The defect in this respect, if a defect it was, was one in the original construction of the road. No principle of law is better established than this, that it is the duty of the master to use all reasonable care and caution in constructing and procuring instrumentalities, machinery and appliances with which the servant is to perform the work assigned to him. The care required must depend upon the danger to be reasonably apprehended from the use of the appliance for the purpose for which it is designed. For a failure to perform this duty, resulting in an

injury to the servant, the master is liable ; and this principle of law is not to be whittled away by refined exceptions. In *Huhn v. Railroad*, 92 Mo. 440, we held that the question whether a failure to block guardrails was negligence on the part of the defendant was a question of fact for the jury to determine. There is this difference between that case and this one ; there the accident occurred in the yards of a railroad company ; here it occurred on the switching grounds of a coal company operating a railroad. The use to which this road was put and the extent of the use was a proper matter for the jury to consider, but in this as in that case it was for the jury to say whether the defendant used reasonable care and caution in the construction of the road, and whether a failure to block the rails constituted a want of that care. ·

Under the instruction given at the request of the plaintiff the jury must have found that a failure to block the rails rendered it unsafe and dangerous for the employes engaged in coupling cars ; whilst those given at the request of the defendant declared that if the track was so constructed as to be reasonably safe for the employes, considering the character of the road and the amount of business done thereon, then the plaintiff could not recover, though the track would have been safer had the space between the rails been blocked. And in another instruction the court told the jury that plaintiff could not recover "if the switch rails of the railroad track at the place of the accident, as constructed and maintained, were reasonably safe for defendant's employes while in the careful discharge of the duties required of them." These instructions are consistent, and fairly presented the issue.

7. The plaintiff's third instruction is in these words : "If the jury believes from the evidence that plaintiff was injured by reason and on account of the failure to block the space between the switch rail and the track rail mentioned in evidence, and that the space between

said rails where he was injured was unsafe and danger-
ous for plaintiff and others in defendant's employ to
work in and about same, then plaintiff's right of recov-
ery herein will not be defeated by knowledge on his
part, if he' had knowledge of the condition thereof, if
it was not so dangerous as to threaten immediate injury,
or if he might reasonably have supposed that he could
safely work about it, by the use. of care and caution,
and if he did use all the care incident to the condition
in which he was placed.''

From plaintiff's evidence, which stands ·undisputed
and unquestioned, it appears he was inexperienced in
coupling cars, and this the defendant well knew.    It is,
therefore, more than probable that the jury found he
did not know the rails were unblocked, or was not aware
of the danger arising from the want of blocks; for sev-
eral of the instructions given at the request of plaintiff
include a finding upon these matters.    But in view of
the instruction just quoted we must assume that he
knew the ·rails were not blocked.    Does this single fact
defeat his action ?    We hold it does not.

Where a servant, it has been broadly stated, con-
tinues in the employment after knowledge of a defect
in the appliance, he thereby waives all objections to
such defective instrumentality and takes upon himself
all the risks,    Such a doctrine makes it the duty of the
servant to abandon his contract of employment, because
of a breach of duty on the part of the master, and is
unjust and unreasonable.    Hence, it has been very much
modified in many jurisdictions.    A like question arose
in the *Huhn case* before mentioned, where an employe
of the company was injured by reason of an unblocked
guardrail, and a like question arose again in *Soeder v.
Railroad*, 100 Mo. 673.    These cases hold that mere
knowledge of a defect in a railroad track will not, as a
matter of law, defeat the servant's action for injuries
arising from such defect.    Mere knowledge that the
appliance is defective and that risk is incurred in its use

will not, as a matter of law, defeat the servant's action, where the danger is not such as to threaten immediate injury, or where it is reasonable to suppose the appliance may be safely used by the use of care and caution. The same principle had been before asserted by this and other courts as will be seen by the authorities cited in the *Huhn case*, namely: *Stoddard v. Railroad*, 65 Mo. 514; *Devlin v. Railroad*, 87 Mo. 545; *Snow v. Railroad*, 8 Allen, 441; *Patterson v. Railroad*, 76 Pa. St. 389; *Railroad v. Ogden*, 3 Col. 500; *Lasure v. Mfg. Co.*, 18 S. C. 276; *Perigo v. Railroad*, 55 Iowa, 326; *Hawley v. Railroad*, 82 N. Y. 370. To these may be added *Railroad v. Mares*, 123 U. S. 710. That, it is true, was a case where the servant sued for injuries received by the negligence of an incompetent coservant; but the effect of continuing the service after knowledge of such incompetency of the coservant is determined by substantially the same rules as in those cases where the servant continues the service after knowledge of the danger arising from a known, defective appliance.

The question, whether continuing in the service after knowledge of danger arising from a defective appliance will defeat the servant's action, is properly a question of contributory negligence, as the authorities before cited well show, and is to be determined by rules applicable in such cases. In some cases it will be a question of law upon given facts. In other cases, and generally, it will be a question for the jury under all the circumstances. This subject is treated with care and much candor in the recent edition of Shearman and Redfield on Negligence. It is there stated as a result of the better cases: "The true rule, as nearly as it can be stated, is that a servant cannot recover against his master for an injury suffered through exposure to danger from defects of which he had notice, if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would not have continued the same work under the same risk. * * * The test

of prudence, in these cases,  *  *  *  is that which a prudent servant of the same class using such prudence and judgment as such persons usually possess, but no more, might reasonably be expected to apply to the particular case." 1 Shear. & Red. on Neg. [4 Ed.] secs. 211, 212. It is not necessary to pursue this subject any further. It follows from what has been said that there is no error in the instruction under consideration. It may be observed that other full and complete instructions were given at the request of defendant upon the subject of contributory negligence, which authorized the jury to take into consideration all the circumstances in evidence.

8. Further error is assigned to the action of the court in modifying the defendant's fourth instruction. As modified and given, it contains this clause: "If, in attempting to couple such cars, plaintiff stood upon the rails of said track unnecessarily, and it was more dangerous for him to be upon such rails than to have been standing elsewhere, where he might have performed the same duty, *and in so standing upon the rails plaintiff was guilty of negligence which brought about or contributed to the injuries sustained*, then the finding should be for defendant." The italicized words indicate the modification made by the court.

Though the plaintiff says he reached up to make the coupling, and in putting his foot down it caught in the rails, still it is by no means clear that he was standing on the rails. But, be this as it may, the instruction, as asked, made standing on the rails contributory negligence as a matter of law, while as modified it left that question as one of fact for the jury to determine. It cannot be said that plaintiff was, as a matter of law, guilty of negligence because he stood upon the rails when attempting to couple the cars. This is too clear to admit of any doubt, and there was no error in submitting that question, as one of fact, to the jury.

The judgment in this cause is affirmed. All concur, except SHERWOOD, P. J., who dissents.