O'MELLIA v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

### Division Two, March 25, 1893.

1. **Master and Servant:** APPLIANCES: INSTRUCTIONS.   A series of instructions as to the duty of the master in furnishing suitable appliances for the use of the servant and the risks assumed by the servant in using them approved.

2. **Railroad Switchman:** DEFECTIVE FOOTBOARD:   NEGLIGENCE. A railroad is responsible for the death of a switchman killed while in the performance of his duty and using ordinary care in attempting to get on the footboard of a slowly moving locomotive, if the company knew or by the exercise of ordinary care might have known that the footboard which it had provided for deceased to ride on was defective or unsafe by reason of its slanting condition.

3. ——: ——: ——: ——.   Though the board was slanting, the company would not be liable for the switchman's injury if he negligently got in front of the moving engine and without care attempted to get on the footboard and slipped and fell.

4. ——: ——: ——: KNOWLEDGE OF DEFECTS.   Knowledge by the switchman of the slanting and dangerous condition of the footboard by reason of which he was killed will preclude a recovery for his death, unless the footboard was not so dangerous as to threaten immediate injury or the deceased might have reasonably supposed that he could with care and caution have safely used it.

5. ——: ——: ——: QUESTION FOR JURY.   Whether the footboard was unsafe because of its slanting condition was, under the evidence, a question for the jury.

6. ——: ——: ——: ASSUMPTION OF RISK.   The risk of a defective footboard was not one assumed by the switchman by virtue of his employment.

O'Mellia v. The Kansas City, St. J. & C. B. Ry. Co.

7. ———: ———: ———. It is not necessarily negligent for a switch-man accustomed to the work to step upon a properly constructed foot-board of a slowly moving engine, especially where there is no rule forbidding it.

8. **Negligence, When a Question for the Jury.** Where a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the matter is for the jury.

9. **Negligence, Question of Law, When.** It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.

10. **Evidence:** EXPERT. An expert builder of stairs may give his opinion as to the proper slant of a step.

11. ———: ERROR: INSTRUCTION. An error in the admission of evidence is in a civil case cured by an instruction withdrawing it from the consideration of the jury.

12. **Evidence:** NEGLIGENCE: CUSTOM OF SWITCHMEN. Evidence as to a custom of switchmen in yards other than defendant's of getting on and off footboards of moving engines it seems was admissible as bearing on the question of the negligence of the conduct of the deceased in this case.

13. ———: ———: DEATH OF HUSBAND: WIDOW. It is not error to permit a widow suing for the death of her husband, an employe of a railroad company and charged to have been killed by its negligence in furnishing him with a defective appliance, to testify as to the number of her children.

14. ———: ———: MORTALITY TABLES. The reasonable expectancy of decedent's life as shown by the testimony of a physician and by mortality tables is in such action a proper fact to be considered by the jury in estimating the damages.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*C. A. Mosman* for appellant.

(1) The risk incurred in O'Mellia's reckless attempt to mount upon the moving engine from between the

rails of the track was his own. He could not make the attempt and hold the master responsible for the result. *Bunt v. Co.*, 138 U. S. 485; *Solomon v. Railroad*, 103 N. Y. 437; Wood on Master & Servant, sec. 372; Shearman & Redfield on Negligence, sec 96; *Moran v. Brown*, 27 Mo. App. 487; *Felch v. Allen*, 98 Mass. 572; *Porter v. Railroad*, 71 Mo. 77; *Randall v. Railroad*, 109 U. S. 483. The law is that when a servant willfully encounters dangers which are known to him, the master is not responsible for an injury occasioned thereby. *Knight v. Cooper*, 14 S. E. Rep. 999; *Ochsenbein v. Shapley*, 85 N. Y. 214. Here the servant creates the peril by the way he chooses to get upon the engine to ride. (2) The contributory negligence of plaintiff bars a recovery, and the demurrer to the evidence should have been sustained. *Henry v. Railroad*, 76 Mo. 293; *Loeffler v. Railroad*, 96 Mo. 270; *Jackson v. Railroad*, 104 Mo. 454; *Jones v. Railroad*, 95 U. S. 445. (3) The court erred in its rulings on the evidence; the admission of the American Experience Table was error.

*Beebe & Watson* for respondent.

(1) There was abundant evidence of the defendant's negligence to carry the case to the jury. 1 Shearman & Redfield [5 Ed.] secs. 194–204; *Francis v. Railroad*, 19 S. W. Rep. 935; *Gutridge v. Railroad*, 105 Mo. 520. (2) Whether deceased was negligent was a question for the jury. *Swigert v. Railroad*, 75 Mo. 475; *Straus v. Railroad*, 75 Mo. 185; *Railroad v. Ives*, 12 U. S. Sup. Ct. Rep. 682; *Francis Case, supra; Henry v. Railroad*, 19 S. W. Rep. 239; *Williams v. Railroad*, 18 S. W. Rep. 1098; *Dixon v. Railroad*, 104 Mo. 504. The court did not err in respect to the admission of evidence. *Tetherow v. Railroad*, 98 Mo. 74; *Soeder v. Railroad*, 100 Mo. 673; *Barry v. Railroad*, 98 Mo. 62.

There was no error in the instructions. *Huhn v. Railroad*, 92 Mo. 440; *Hamilton v. Railroad*, 18 S. W. Rep. 977.

GANTT, P. J.—This action was instituted in Jackson county to recover damages for the death of William O'Mellia, a switchman in defendant's yards at Kansas City, Missouri.

He was killed by a switch engine about two o'clock in the afternoon of March 21, 1890. The switch engine was manned by the following crew: Morris Sheehan, foreman, George Root, engineer, Thomas Hand, fireman and J. H. Larrimer and William O'Mellia, switchmen. There were no cars attached to the engine at the time of the accident. O'Mellia was what is termed among railroad men, "a follower." It was his duty to throw switches, couple and uncouple cars to and from the switch engine. Engine number 28 which ran over and killed him had footboards at each end of the engine eight feet long, twelve inches wide and about a foot above the ground. It also had sideboards on each side of the engine about a foot from the ground. These footboards were furnished by the company for its switchmen to ride backward and forward in the discharge of their duties. They were constructed level to prevent the men from slipping off, but they frequently got out of repair and became slanting.

On the day of the accident, the crew of the engine number 28 were going to the west bottoms with the engine to get some cars. At a point about one mile from the place where they were to get the cars there was a switch which let them in on another track. On arriving at this switch, the engineer stopped the engine so the switch could be thrown, and directed his fireman to get off the engine and remove a cinder

which had gotten into one of the cylinder cocks.
When the engine stopped, O'Mellia, as his duty
required, got off the engine, threw the switch, which
was on the north side of the track, gave the engineer
the signal to back up and then passed along westward
by the side of the tender or tank as some of the
witnesses called it.   Up to this time the engine had
been running forward.   After the switch was thrown
the engine was run backward to make the desired
coupling.   O'Mellia passed to the rear of the engine,
crossed the track and stood either *with his left foot only
inside the rail*, and the remainder of his body outside,
*or he stood wholly outside the rails*.   He stood at a point
about five feet from the engine two or three seconds.
the engine began to back slowly toward him, going at
the rate of two or three miles an hour.   There was
some evidence that his attention had been called away
and he turned to the engine just as it approached him.
There is no conflict as to the very slow movement of the
engine.   When the footboard came near enough,
O'Mellia stepped on it with his left foot, but his foot
slipped off, the footboard struck his leg and knocked
him down.   The rear truck caught his left foot and
tore and mashed the flesh from the ankle to the thigh
of his left leg, from which injury he died.   He was
dragged five or six feet before the engine stopped.
The evidence as to his stepping on the footboard
tended to show that he got the ball of his foot or
three or four inches of the front of his foot on the
board.

The evidence as to the slanting of the board was
conflicting.   Russell, a stair-builder in behalf of plain-
tiff, testified it slanted over an inch.   Members of the
coroner's jury examined the footboard the next day
after the accident when in the same condition it was at
the time of the accident, and testified that in their judg-

ment it slanted from an inch to an inch and a half. They agreed it was perceptible to the eye. Henry Ment, an employee of the defendant, testified, he measured it out of curiosity and found the slope only a quarter of an inch. Christian Yetter, a stair builder, called by defendant, as to the proper slope or slant to steps, testified that a slope of one eighth of an inch to a step ten inches wide would, in his opinion, be about right. He thought it might reach a quarter with safety, but should never exceed a quarter. His experience was confined to steps to houses and had never been engaged in making steps like this on an engine, and thought the situation of the step would have a great deal to do with it.

The evidence of Crawford, Sheehan and other train operatives tended to prove that it was customary for switchmen to get on the footboard across the rear end of the tender, when moving slowly as this engine was; that the duty of the follower required him to be on this footboard. There were no rules of the company forbidding a switchman from getting on the footboard where O'Mellia tried to get on. Sheehan testified it had been the custom to board the engines in this manner. Larrimer and Sheehan both testified that they had noticed the slanting of the board. It was in evidence that the yard-master was frequently in the yards, saw the men board cars in the manner O'Mellia did and made no objections. The duty of inspecting the footboard and all other parts of the engine devolved upon the engineer. He was required to inspect it daily. It was his duty to report anything out of repair. He testified that he didn't remember positively whether he examined this engine and footboard on the day of the accident or not. He further testified that his examination consisted simply in glancing over the engine.

The case was tried to a jury and resulted in a verdict for the plaintiff for $5,000.

The motion for new trial assigned as errors, that there was no evidence to support the verdict; that it was against the law and the evidence; that the court admitted incompetent evidence for plaintiff and excluded competent evidence for defendant.

"7. The court erred in refusing the demurrer to the evidence."

"9. The court erred in giving plaintiff's instructions 1 to 6 inclusive.

"10. The court erred in refusing defendant's instructions 11, 12a, 13, 14 and 15 and modifying the 17th.

"11. The verdict is excessive."

The court gave the following instructions for plaintiff:

"1. It was the duty of the defendant to furnish the deceased O'Mellia a reasonably safe footboard on the engine tender and keep the same in a reasonably safe condition. If you believe from the evidence that at the time of the said O'Mellia's injury the footboard on the tender of said engine was in a slanting condition and was therefore rendered defective and unsafe for use, and that the defendant, the railway company, either knew or by the exercise of ordinary care might have known that the said footboard was defective and unsafe for use by reason of the same being in a slanting condition in time so that by the exercise of ordinary care said company might have put the same in a reasonably safe condition before the injury of the deceased, and that the said O'Mellia at the time of the injury exercised reasonable care in attempting to get on said footboard, and while in the exercise of such care slipped off the same in consequence of its being in a slanting condition, and thereby defective and unsafe

for use, and was thereby killed, then your verdict must be for plaintiff.

"2. In determining whether plaintiff's husband, William O'Mellia, exercised reasonable care in stepping or attempting to step on said footboard, you are instructed that he was only required to exercise such care as a careful and prudent switchman would have exercised under like circumstances.

"3. Although you may believe from the evidence that the deceased knew, or by the exercise of ordinary care might have known, that the footboard was in a slanting condition, and continued to use the same, yet, if the said footboard was not so dangerous as to threaten immediate injury to him from its use at the time and under the circumstances of the injury, or if he might have reasonably supposed that he could safely work about it by the use of care and caution, he cannot be said to have been guilty of such contributory negligence as to defeat a recovery, provided that, in attempting to get on the said footboard and in the manner adopted by him at the time, he exercised such care as a careful and prudent man of his calling would exercise under like circumstances."

"6. That ordinary care is such care as a person of ordinary prudence and caution would usually exercise in the same situation and under the same circumstances."

Defendant asked and the court gave the following instructions, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 16 and refused numbers 11, 13, 14, 15 and 17 as asked, but gave it as amended.

"1. The defendant is not liable in this case because O'Mellia was injured and killed by one of its engines, unless the defendant was guilty of negligence as charged in the first count of plaintiff's petition, and said O'Mellia was injured and killed in consequence of such

negligence, and not because of his own negligence or want of ordinary care or caution on his part.

"2. The burden is upon the plaintiff to show by a preponderance of the evidence that the footboard in question was at the time of the injury so slanting as to be dangerous, and that the deceased stepped upon said footboard, and because of the slanting condition of said footboard was thrown down and thereby injured and killed.

"3. Even should the jury believe from the evidence that the footboard in question was slanting, and plaintiff was run over by defendant's switch engine and killed, yet if the jury believe from the evidence the deceased negligently or without ordinary care and caution got upon defendant's track in front of the approaching engine and negligently or without ordinary care and caution attempted to step upon the footboard in question, and in doing so slipped and was run upon by said engine and killed, then the plaintiff cannot recover.

"4. Although the jury may believe from the evidence that the footboard in question was slanting, yet the plaintiff cannot recover if the jury further believe from the evidence that the deceased negligently or without ordinary care or caution got upon defendant's said track and attempted to get upon the footboard of the approaching engine from said track, and, in doing so, slipped from said footboard and was run upon by said engine and killed.

"5. If the deceased attempted to get on the footboard of an approaching switch engine, and, in doing so, so far contributed to the misfortune by his own negligence or want of ordinary care and caution that but for his negligence or want of care and caution on his part the misfortune would not have happened, then the plaintiff cannot recover.

"6. If the deceased voluntarily put himself into a dangerous position and was thereby injured, when there were other positions he might have taken in the discharge of his duty to defendant that were safe, then he was guilty of negligence and plaintiff cannot recover.

"7. If the jury believe from the evidence that the footboard in question was in the same condition as it had been for several months, and deceased had been in the habit of using said footboard during said time while on duty and at work as a switchman, then knowledge on his part of the condition of said board may be inferred from such use.

"8. If the deceased knew the condition of the footboard in question at the time of the injury complained of and negligently went upon defendant's track in front of an approaching switch engine in order to step upon said footboard and his foot went between the ties and he was thereby injured and killed, then he was guilty of negligence and plaintiff cannot recover.

"9. All evidence introduced by plaintiff in relation to any custom among switchmen of railroads other than defendant is excluded from the jury.

"10. If it was dangerous to get from defendant's track upon the footboard of an approrching engine, then no custom among defendant's switchmen to do so would justify or excuse deceased in so doing if he did so.

"11. Any evidence in the case as to any custom among switchmen of defendant's railroad company as to the manner of getting on the footboards of a moving engine is excluded from the jury.

"12. The law imposed on the deceased the duty to use ordinary care and diligence for his own protection and security against accident, and the care and diligence he was bound to exercise must have been in pro-

portion to the danger to be avoided, and, if he failed and neglected to use ordinary care and diligence in determining which of the footboards of defendant's switch engine, if there were more than one of them, or in the manner in which he attempted to get on the footboard in question, then he was guilty of negligence, and plaintiff cannot recover.

"12a. If the jury believe from the evidence that deceased negligently got upon defendant's track to step upon the footboard in question as said switch engine approached him, and in attempting to step on said footboard slipped from said footboard onto the track and was run upon and killed by said engine and if they further believe from the evidence that there was upon either side of the track (tank) of said engine and at the other end of said engine a footboard upon which deceased could have safely stepped, then he was guilty of negligence and the plaintiff cannot recover.

"13. If the deceased in attempting to step upon the footboard of the approaching switch engine from said track failed to properly and carefully put his foot upon said board, and to catch hold of the hand rail, as he stepped, if there was such a rail to catch hold of, and in consequence thereof fell and was injured and killed, then he was guilty of negligence, and plaintiff cannot recover.

"14. If there was a footboard and hand rail at each end of the engine in question, and upon either side of the tank of said engine, the deceased was at liberty to get upon either of said footboards and he chose to get upon the front (rear) footboard, and if he negligently went upon defendant's said track ahead of the engine for that purpose and negligently awaited the approach of said engine as it came towards him, then he must be held to have assumed the risks that he placed himself in; and if in attempting to get upon said footboard

from said track he slipped therefrom and was run upon and killed, then he was guilty of negligence and plaintiff cannot recover.

"15. The court instructs the jury that it is not alleged in the petition that defendant was guilty of negligence in failing to provide rules regulating the manner in which switchmen shall get upon the footboards of the engines, and it is immaterial in this case whether there were any such rules or not."

On the margin of this instruction is written, "Refused. Was offered at the conclusion of first argument of counsel for the plaintiff."

"16. If the jury shall believe from the evidence that defendant's switch engine was furnished with a footboard for its employes to ride upon in going to and from different parts of its switch yards, and a hand rail for such employes to catch hold of in getting on or off said footboard, and that the deceased in attempting to get upon said switch-board from defendant's track, and if it was necessary to use said hand rail to enable the deceased to get on said footboard with safety, and deceased neglected to do so, and in consequence of such failure was injured and killed, then he was guilty of negligence and plaintiff cannot recover.

"17. If the deceased went upon defendant's track and attempted to get on the footboard of an approaching engine and if he knew at the time that said footboard was slanting and dangerous, and if in attempting to get on said footboard he slipped therefrom because of its slanting and dangerous condition, and was injured and killed, then plaintiff cannot recover.

"17. (Amended). If the deceased went upon defendant's track and attempted to get on the footboard of an approaching engine and if he knew at the time that said footboard was slanting and dangerous, and if in attempting to get on said footboard he slip-

ped therefrom because of its slanting and dangerous condition, and was injured and killed, then plaintiff cannot recover unless you find from the evidence that the said footboard was not so dangerous as to threaten immediate injury to him from its use, or he might have reasonably supposed that he could safely work about it by the use of care and caution as stated in instruction number 3 given at the instance of the plaintiff.''

I. The instructions in this case are clear, and present in a most concise form the law as to the relative duties of master and servant in respect to the furnishing of suitable appliances by the master, and the duties and risks assumed, and cast by the law, upon the servant. In a word they required of the defendant in this case that it should furnish the deceased switchman reasonably safe appliances and instrumentalities for the work for which he was employed, and to keep the same in a reasonably safe condition of repair. For a failure to do so, the defendant was held liable if it knew or by the exercise of ordinary care it might have known the footboard which it had provided for the deceased to ride on was defective or unsafe by reason of its slanting condition.

On the other hand, it exacted of O'Mellia, the switchman, the exercise of such care in the use of said board and in the performance of his duties in and about said engine as a careful, prudent switchman would have exercised under the same circumstances. On the part of defendant the court declared the law to be, that although the board was slanting and the deceased was run over and killed by the engine of defendant, yet if the deceased negligently and without ordinary care got in front of the moving engine and without care attempted to get on said footboard and slipped and fell, then his widow could not recover, and the jury were told, that,

if deceased by his own want of care contributed to his misfortune, he could not recover.

Moreover the court instructed the jury, that, if the deceased went upon the defendant's track and attempted to get on the footboard of an approaching engine, and if he knew at the time that said footboard was slanting and dangerous, and if in attempting to get on said footboard he slipped therefrom because of its slanting and dangerous condition and was injured and killed, then his widow, the plaintiff, could not recover, unless the jury should find from the evidence that the said footboard was not so dangerous as to threaten immediate injury to him from its use, or he might have reasonably supposed that he could safely work about it by the use of care and caution as stated in the other instructions. Each of which propositions is amply sustained by the decisions of this court. *Gibson v. Railroad*, 46 Mo. 163; *Brothers v. Cartter*, 52 Mo. 372; *Gutridge v. Railroad*, 105 Mo. 520; *Hamilton v. Mining Co.*, 108 Mo. 364; *Soeder v. Railroad*, 100 Mo. 673; *Mahaney v. Railroad*, 108 Mo. 191; *Huhn v. Railroad*, 92 Mo. 440.

Now, whether the appliance, the footboard provided by defendant for O'Mellia to ride upon, was unsafe, because the slope or slant was too great, was a question of fact for the jury. *Railroad v. Keenan*, 103 Pa. St. 124. The evidence was conflicting on this point, but it is fair to say that there was ample evidence from which the jury were authorized to find that this footboard slanted from an inch to an inch and a half from the edge next to the tender to its outer edge, the width of a foot, and no witnesses, even for defendant, thought a slant of over a quarter of an inch was safe. The jury evidently found the appliance was not reasonably safe.

Again, the jury were required to determine whether the deceased was exercising ordinary care in attempting

to get on this board at the time he was killed. Defendant contends that his conduct was wantonly reckless, and that the uncontroverted facts entitled it to a peremptory instruction compelling a non-suit by plaintiff or a verdict in its favor. To sustain this extreme view of this evidence the defendant assumes that the deceased recklessly stepped between the rails in front of a rapidly moving engine, thus placing himself in a place of threatened peril, and then recklessly attempting to board the tender from this point instead of from its side.

Negligence is a relative term. We may concede that a railroad track to the traveller in no way connected with the road is, in and of itself, a signal of danger and he should never halt between its rails. In the language of the able counsel we are free to say it requires little experience in a switchman or for that matter in any sensible person to determine that it is a piece of reckless folly for one to stand between the rails of a railroad track on which an engine is rapidly moving towards him and attempt to get on the footboard as the engine reaches him. But this evidence discloses no such state of affairs.

Here we have an experienced switchman, whose duty has called him off of the engine to throw a switch. Having accomplished this, instead of standing between the rails as the supposed case requires, the evidence tended to show he stood either wholly outside of the track or with only one foot inside the track. Nor do we have the essential feature "*of a rapidly* moving engine" in the actual case. The uncontradicted evidence is, that, when the engine halted for deceased to throw the switch, it was discovered a cinder had fallen into the cylinder cock and the fireman had dismounted to remove it, so that when the switchman O'Mellia took his station the engine was only five feet distant and

entirely still. When it began to move it was going at a rate of two or three miles an hour and it had only to move even at this rate five feet before the deceased placed his foot upon the footboard, and we are asked to say that it was such a piece of recklessness in a brakeman to make this attempt as to preclude all recovery. The proposition is utterly unreasonable upon its face.

While we agree that the negligent and reckless performance of a duty by one or all the brakemen or switchmen will not excuse one for following their example, we do not agree that it is necessarily negligent to step upon a properly constructed footboard of a slowly moving engine by one accustomed to the work. It was shown that there was no rule forbidding the brakemen and switchmen from getting on these footboards under such circumstances; that daily for eight years it had been done in the presence of the officers of defendant without a word of reproof or a rule made forbidding it. The circuit court would not have been justified in sustaining the demurrer to the evidence. *Barry v. Railroad*, 98 Mo. 62; *Francis v. Railroad*, 110 Mo. 387.

Again, it is argued that the defective footboard was not the proximate cause of the injury.

This fact in connection with the care used by O'Mellia was fairly submitted to the jury, and there was evidence from which the jury might well have attributed the injury and death entirely to the slanting condition of the step. This having been left to them under proper directions and the fact found from competent evidence, it will not be assumed differently in this court. The risk of a defective footboard was one not assumed by the switchman by his employment as such. The whole question of whether O'Mellia placed his foot far enough on the board; whether he grasped the hand-rail; whether his foot slipped on account of

the slant, was heard and determined by the jury. It was a case peculiarly appropriate for the judgment of a jury.

As stated by Mr. Justice LAMAR of the supreme court of the United States in *Railroad v. Ives*, 12 Sup. Ct. Rep. 679: "The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." 16 American & English Encyclopedia of Law, 402, Title Negligence.

As to the alleged errors in the admission of evidence the defendant complains that Russell, who was an expert stair builder, was allowed to give his opinion as to the proper slant of a step. This witness stated his method of measurement and he was carefully cross-questioned by the able counsel of defendant before the jury. The evidence was competent, but the court withdrew it in an instruction number 4 and cured any harm it might have done. And this also applies to Crawford's testimony. There was no error to complain of after its withdrawal. It is perfectly competent for the court to do this in a civil case.

The court also withdrew from the jury the evidence of the custom of getting on rear footboards practiced by switchmen in other yards. As the question was whether deceased's conduct was negligent under the

O'Mellia v. The Kansas City, St. J. & C. B. Ry. Co.

circumstances, we see no harm in the evidence anyway. The measure of his care was the prudence of careful and prudent switchmen, and it cannot well be seen what particular difference it made to defendant whether those careful and prudent switchmen were in its employ or of other railroad companies using like appliances and engines. There is no cause for reversal certainly in the action of the court.

There was no error in permitting Mrs. O'Mellia to testify as to the number of her children. The elements of her damage are necessarily different from her husband. *Soeder v. Railroad*, 100 Mo. 673; *Tetherow v. Railroad*, 98 Mo. 74.

There was no error in admitting the testimony of Dr. Bryant and the mortality tables which were properly identified. The reasonable expectancy of life was a proper fact for the jury in estimating the damages. *McGowan v. Ore & Steel Co.*, 109 Mo. 518.

We have gone carefully through the exhaustive brief of the learned counsel for defendant, and while many of his arguments are very forcible they are such as should be and doubtless were made to the jury, and that tribunal having found against him, in the absence of some substantial error in the instructions or ruling on the evidence, which we do not find, it is our duty to affirm the judgment. The judgment affirmed. All concur.