H. J. STERNBERG et al. v. JOHN W. LANIER.

Western Section. November 12, 1926.

No petition for Certiorari was filed.

1. **Master and servant. Assumption of risk.** Evidence held to show that plaintiff had not assumed the risk of injury.

In an action by a servant to recover for a broken arm sustained while employed on a dredge, held that the question of assumption of risk was properly submitted to the jury.

2. **Master and servant. Assumption of risk. Before there can be an assumption of risk the danger must be known to the servant.**

Where the evidence showed that a cable on a crane had been broken and temporarily repaired, and the servant and the foreman both considered the cable safe for the time being, but realized the importance of permanent repair as soon as possible, held that under these facts there was no assumption of risk on the part of the servant.

3. **Master and servant. Assumption of risk. Where master promised to repair machinery and the servant continued to work on strength of the promise, there is no assumption of risk on the part of the servant.**

Where the evidence showed that the master had promised, some time prior to the accident, to make permanent repair on the machine, and the servant continued working on the same considering it safe for the time being, held that the master was liable for injuries sustained because of the defective machinery.

Appeal in Error from Circuit Court of Shelby County; Hon. A. B. Pittman.

Affirmed.

Allen, Hughes, Davis & Costen, of Memphis for plaintiff in error.

Hamilton E. Little, Frank J. Glanker and Holmes & Canale, of Memphis for defendant in error.

HEISKELL, J. This case is an action by a servant against his master for damages for personal injuries. The parties will be designated here as plaintiff and defendant as they were in the trial court.

The defendants, the Sternbergs, were, at the time of the accident, engaged in the business of excavating a drainage canal in Mississippi county, Arkansas. The work was done by means of a dredge. A dipper attached to a long arm, or boom, scoops out the dirt, is then swung to the bank and there emptied. The movements of the dipper, lowering, scooping, swinging and emptying—are accomplished by means of wire cables and pulleys attached to it and to the other machinery. The power is furnished by a steam engine fixed on a boat. That part of the canal already dug is full of water and the boat floats therein and follows the work. The derrick and all other machinery is on the boat.

The boat was operating day and night. There was a day shift of workmen and a night shift. There were four men in each shift, a runner, a craneman, a fireman and a deckhand. Lanier, the plaintiff, was a runner, that is one who runs or operates the dredge machinery.

J. B. Shoemake was foreman in charge of the entire operation. Tom Shoemake, his brother, was a runner also, the same as the plaintiff. The plaintiff had been a runner for years and was familiar with this dredge, having worked with it for sometime.

One of the cables operated by the plaintiff was attached to the dipper. It came loose from the dipper some days before plaintiff was hurt. At that time Tom Shoemake was operating the machine. Plaintiff was not on duty, and was not present when the cable parted but came back on the boat. No one was then hurt. Tom asked the plaintiff to show him how to refasten the cable to the dipper and plaintiff did so.

It was not plaintiff's duty to make the repairs but he helped Tom devise a plan of repair. The actual work of repairing was done by Tom Shoemake.

The machine was operated by plaintiff at night and by Tom Shoemake by day at the time of this break. The next week Lanier went on the day shift. A day or two after he went on the day shift the cable came loose again, flew back and struck plaintiff, breaking his arm.

The case was tried by Hon. A. B. Pittman and a jury in the circuit court of Shelby county and there was a verdict in favor of the plaintiff for $3000. After motion for new trial overruled the defendant appealed and has assigned errors as follows:

(1) The trial court erred in refusing to direct the jury to return a verdict for defendants when there was a total lack of evidence to support the plaintiff's case in these particulars.

(a) The plaintiff had, with full knowledge, assumed the risk of injury.

(b) There was no complaint of danger and no promise to repair having reference to danger.

(c) The plaintiff continued work for a week and until the day he was hurt without talking to the foreman about repairs.

(d) The plaintiff admits that he thought there was no danger.

(e) The plaintiff, by his own testimony, was not induced to remain by the alleged promise because it was not made until the day he was hurt.

(2) The court erred in refusing to instruct the jury in substance as requested in defendants' request No. 1 as follows:

"You are instructed that in this case the defendant is not liable for any injury to the plaintiff by reason of the negligence of a fellow servant, and in this case the defendant can only be liable for that negligence, if any, of themselves or their vice-principal causing the injury complained of. If you find in this case that the negligence complained of was the negligence of T. J. Shoemake, and if you find that T. J. Shoemake was a fellow servant of plaintiff, then the plaintiff cannot recover, and you will find for the defendant."

(3) The court erred in refusing to instruct the jury as requested in defendants' request No. 11, as follows:

"You are instructed that plaintiff assumes the risk of dangers in his employment, of which he is aware, and which he appreciates, and in this connection you are instructed that the servant is not freed from the assumption of risk where he has complained of defective machinery and the defendant has promised to repair same, if the danger is so open and obvious that a person of ordinary prudence would not continue to use defective machinery.

Even though you find that plaintiff complained to defendants' foreman of defective machinery, and even though you find further that the foreman promised to repair same, and further find that plaintiff continued in the employment relying on the foreman's promise to repair it, you are, however instructed that before you can find for plaintiff you must further find that the danger was not so open and obvious that a person of ordinary prudence would have continued to use the machinery and subject himself to the risk or you must find that the foreman instructed the plaintiff that it was safe to continue to use the machinery, otherwise, you must find for defendant."

(4)    The court erred in refusing to instruct the jury as requested in defendant's request No. IV, as follows:

"In this case the defendant pleads that the plaintiff was guilty of contributory negligence, thereby constituting proximate cause of the injury complained of, and if you find in this case that the injury complained of was the result of and was caused by the negligence of the plaintiff, and that such negligence of plaintiff was the proximate cause of the injury then you will find for the defendant."

(5)    The court erred in refusing to instruct the jury as requested in defendant's request No. VIII, as follows:

"You are instructed that if the plaintiff in making repairs on the bucket could have placed the bucket in a position where there would have been no strain on the backing line and the repairs could have been made with complete safety to himself, and he knowingly and negligently failed to do this, then you are instructed that the plaintiff was guilty of contributory negligence in drawing the bucket up against the front end of the boat, and cannot recover."

(6)    The court erred in refusing to instruct the jury as requested in defendant's request No. XII, as follows:

"You are instructed that if the defendant had a rule which required employees to place the bucket on the bank when repairs were to be made on it, and that the plaintiff knew of this rule and failed to comply with it, then he cannot recover in this action."

(7)    The court erred in refusing to set aside the verdict as excessive.

It is insisted for plaintiff that subdivisions (b) (c) (d) and (e) of this first assignment were not embraced in the motion for a new trial and therefore cannot be considered, and that besides the assignment is defective in that raising questions of fact it does not cite the testimony, by reference to the transcript, relied on to support the contentions. There is great force in this insistence of the plaintiff. However, we have examined the record and are of the opinion that even if the grounds of this assignment are properly presented for consideration they are not entitled to be sustained.

The contention that the plaintiff had with full knowledge assumed the risk of injury, was covered by the motion for a new trial, but this question was left to the jury under a full and correct charge by the court. If as a basis for their verdict the jury found that plaintiff had not assumed the risk, it cannot be said there is no evidence in the record to support the finding.

There was evidence of a promise to repair and whether or not it had reference to danger was a question for the jury. It cannot be said that their finding either way would be unsupported by evidence. There is no objection made to the charge as given. No instruction was refused which should have been given. The jury found for plaintiff and the judge approved the verdict. This is conclusive. Sub-head (c) is:

"The plaintiff continued work for a week and until the day he was hurt without talking to the foreman about repairs." There is some uncertainty in the testimony as to the time which elapsed between the first break and the one which caused the injury to plaintiff. The testimony of witnesses for defendant is somewhat more favorable to plaintiff than plaintiff's own testimony, but taken all together there was evidence before the jury sufficient to warrant a finding that some days before the injury and the first time he saw the foreman after the cable first broke, the plaintiff spoke to the foreman about the permanent repairs and the foreman said the repairs would be made as soon as possible.

(d) "The plaintiff admits that he thought there was no danger." He says he thought the cable as repaired by Tom Shoemake would last until permanent and substantial repair could be made. Tom and J. B. Shoemake thought the same. If the danger had been such that all saw it as immediate there would have been assumption of the risk. But the fact that they all realized the importance of permanent repair as soon as possible was enough to warrant the jury in finding that the promise to repair carried with it the idea of protection against future danger.

(e) "The plaintiff, by his own testimony, was not induced to remain by the alleged promise because it was not made until the day

he was hurt." The whole evidence warranted the jury in finding that the promise to repair was made at least several days before the injury, and as soon as plaintiff saw the foreman, and that between the time of the assurance of the foreman that permanent repair would be made and the time of the injury the defendant assumed the risk. At least, it cannot be said that such a finding is not supported by any evidence. Plaintiff says he would not have remained but for the promise to repair. In the nature of the case this testimony of the plaintiff could not be contradicted by witnesses. However, it is argued that it is contradicted by the fact that plaintiff did not think that there was danger. The plaintiff as well as the two Shoemakes thought the cable was temporarily safe, but it does not follow that any of them would have been willing to continue working with no prospect of permanent repair on the cable. That is to say, there is evidence to support the finding that the plaintiff had no fear of immediate danger and no reason for such fear, as to convict him of contributory negliegnce or assumption of risk for working under the existing conditions. Yet that he had sufficient reason to apprehend that the machinery would not be permanently safe but should be repaired as soon as possible therefore at first appearance of the foreman he inquired about the permanent repairs and was assured they would be made as soon as possible and that plaintiff remained in reliance on this promise. This finding warranted the court, under the law and the evidence, in overruling the motion for a new trial and justifies this court in refusing to disturb the verdict.

Counsel for the defendant cites in brief a number of cases to support the contention that plaintiff assumed the risk of injury but when examined, these cases are found not to be in conflict with the views just expressed. There is no question about the general rule that a servant who knows of a defect in a machine and that it is dangerous and continues to work with it assumes the risk of injury therefrom. Also that the servant assumes obvious risks and the dangers ordinarily incident to the employment. But here there was evidence to support the finding of the jury that the danger was not actually known nor so obvious nor so ordinarily incident to the employment as to necessarily bring this case within the general rule. The cases cited were plainly within the general rule.

Again Grey Eagle Co. v. Perry, 138 Tenn., 231, is cited for the proposition that assurance of safety does not relieve the servant of risk if his knowledge of the danger is equal to or greater than the master's. In that case, however, where the duty of inspection rested on one occupying the position of the foreman, as in this case it was held that his assurance of safety made the master liable.

Besides mere assurance of safety is very different from a promise to repair. The latter implies a certain knowledge of danger which is not met by assurance of safety but by a promise to remove the danger. Not an assurance of present safety which denies the necessity for repair but an assurance of future safety to be secured by repairs to be made.

Counsel also cite cases to support the rule that it is only when plaintiff is induced to remain by the promise to repair that such promise is material. These cases show the difference between assumption of obvious risks and danger, and reliance on a promise to repair, and one of them Halloran v. Iron Foundry Co., 133 Mo., 476, after stating the general rule in regard to assumption of the risk from full notice of the danger says this: ". . . it has often been ruled in this State that this general rule is not applicable if the servant incurs the risk of machinery which though dangerous is not so much so as to threaten immediate injury or when it is reasonable to suppose that it may be safely used with great care or skill." Citing Conroy v. Vulcan Iron Works 62, Mo., 35; Huhn v. Ry., 92 Mo., 440; Hamilton v. Rich Hill Mining Co., 108 Mo., 364; O'Melia v. Railroad, 115 Mo., 205. This distinction applies very aptly to the present case.

In Gowan v. Harley, 56 Fed., 982. The promise of the master was to supply an appliance which would make the work more convenient but not more safe, and Lewis v. Railroad, 153 Mass., 73, was a case where the complaint of the servant had no reference to his own safety, was not made on his own account at all but was that strangers on the pier might be hurt by reason of rotten plank of which he knew but of which strangers might not be aware.

Again we say the cases cited for defendant, some of which we have referred to and others of which we have examined without making special reference to them, do not meet the contention of the plaintiff that the record contains evidence to justify the verdict of the jury.

The second assignment is that the court erred in refusing defendant's request for instruction No. 1 on the subject of negligence of a fellow servant. This assignment is not well taken for several reasons. There is no evidence that Tom Shoemake was negligent and if he was in this matter he was not a fellow servant. It is the master's duty to provide the servant with a reasonably safe place to work, and with reasonably safe machinery, tools and appliances for the performance of his work. If the master deputes the performance of this duty to another the latter, as to this duty, is not a fellow servant, but stands in the master's place and his negligence binds the master. This common-law rule has been frequ-

ently followed by the Supreme Court of Arkansas. Thus, in the case of St. L., etc., Ry Co. v. Parker, 44 Ark., 524, the court said:

"'The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow servants, does not excuse the master from the exercise of ordinary care in supplying and maintaining suitable instrumentalities for the performance of the work required. One who enters into the employ of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. . . .'

". . . The master may not be able to perform this duty to the servant in person, but he must see that some one discharges it faithfully for him. He cannot shirk the responsibility. The law casts upon him certain duties to his employees, and if he deputes the performance to another, the latter, as to these duties, is not a fellow servant with the other employees, but stands in the master's place, and his negligence binds the master. Fones v. Phillips, 39 Ark., 17; Brabitts v. C. & N. Ry., 38 Wisc., 289; N. & C. R. R. v. Elliott, supra."

Again, in the latter case of Bryant Lumber Co. v. Stastney, 87 Ark., 321, 112 S. W., 740, the court declared the same rule in the following language:

". . . The defendant's theory of the case was that the act causing the injury to the plaintiff was due to the negligence of his fellow servant. . . . The court refused the instruction upon this theory, and the court was correct in doing so. The fellow servant doctrine has no place in the case. If Stastney has any action, it is for the failure to provide him with a safe place to work; and the duty resting upon the master to provide a safe place to work is a non-delegatory duty, and is always the master's duty, whether performed in fact by the president of the company, a foreman, or day laborer. Ry. Co. v. Triplett, 54 Ark., 289; St. L., I. M. & S. Ry. Co. v. Inman, 81 Ark., 591; Archer-Foster Const. Co. v. Vaughn, 79 Ark., 20."

See also the case of Oak Leaf Mill Co. v. Smith, 98 Ark., 34, 135 S. W., 333, where a foreman of the defendant Mill Company was permitted to recover damages for injuries sustained by reason of the failure of an inferior employee to make certain repairs so as to keep the premises of the master in a reasonably safe condition.

The defendant's third assignment of error is based on the refusal of the court to instruct the jury as asked in defendant's request 11. There is no reference to this assignment in the brief for defendant and therefore the court is justified in assuming that

it has been abandoned. Besides the instruction requested was given in the general charge and also in special instructions requested by the defendant and given by the court.

The fourth assignment claims it was error for the trial court to refuse special charge No. IV. on the question of contributory negligence. . Here again as in the preceding assignment it is not followed by the brief and may be taken as abandoned. And again as before the instruction asked was fully covered by the general charge and by special instruction requested by defendant and given by the court.

The fifth assignment is that the court erred in refusing to give requested instruction No. VIII. and the sixth assignment insists it was error to refuse requested instruction No. XII. The trial judge refused this last-mentioned request for the reason that the evidence failed to show that the plaintiff had ever been notified of the rule. The plaintiff testified that the rule was unknown to him. And he and J. B. Shoemake testified that the ordinary way of working on the latch was to pull the bucket up to the front end of the boat just as was done on this occasion. The VIII. request was properly refused because it asked the court to charge as a matter of law that it was negligence to handle the bucket for purposes of repairs on it, in the customary and usual way. The court was not even requested to leave the question to the jury as to whether or not this was negligence. Besides the rule laid down in the charge requested, would require the plaintiff to perform his work not only with reasonable care and prudence with regard to his own safety, but would hold him guilty of contributory negligence unless he worked in the safest possible way, and this is not the law.

The seventh and last assignment is that the court erred in refusing to set aside the verdict as excessive. Neither in the assignment nor in the brief is it contended that the verdict is so excessive as to indicate passion, prejudice or caprice on the part of the jury, therefore no ground for reversal is alleged. Brewing Co. v. Ralston, 8 Civ. App., 584; Railway Co. v. Hicks, 1 Civ. App., 513; Tenn. Coal & R. R. Co. v. Roddy, 85 Tenn., 403.

. Counsel for defendant cite in support of this assignment the case of Knoxville News Co. v. Spitzen, 152 Tenn., 614. A quotation from the opinion in that case shows that it is not applicable here, the trial judge had remitted $500 of the $2000 verdict and this was assigned as error by plaintiff. The court in overruling the assignment said:

"As to this we are content to abide the decision of the learned trial judge who saw the witnesses, and was of the opinion $1500 was a sum which met the ends of justice."

All assignments of error are overruled and the judgment of the lower court is affirmed. Judgment will go against defendant for amount recovered below with interest and costs and against the sureties on the appeal bond for costs.

Owen and Senter, JJ., concur.