SCHARFF, Respondent, v. SOUTHERN ILLINOIS CONTRUCTION COMPANY, Appellant.

St. Louis Court of Appeals, December 12, 1905.

1. RES IPSA LOQUITUR: Negligence: Falling Wall. The mere falling of a wall of an uncompleted building whereby damage is done is presumptive evidence that the wall was negligently constructed.

2. NEGLIGENCE: Independent Contractor. In an action for damages caused to plaintiff's house on account of the falling of a wall of a building in process of erection on the adjacent lot, where the defendant (the contractor) was, by his contract, to erect the building according to the drawings of the owner's architect and under the architect's direction, he was an independent contractor and not subject to control of the owner except as to the results of the work and was therefore liable for damages to the adjacent owner caused by the negligent construction of the wall.

3. **PRACTICE: Instruction: "From the Evidence."** An instruction which authorizes a verdict for the plaintiff upon the finding of certain facts is not error by reason of the omission of the words, "from the evidence," where those words are in another clause of the same instruction and so connected by the word "and" as to require the interpretation that such facts are to be found from the evidence.

4. **NEGLIGENCE: Act of God: Wind Storm.** In an action for damages caused to the plaintiff's property by the falling of a wall of a building in the process of erection on the adjacent lot, where the defense was that the wall was caused to fall by the act of God, an instruction which authorized a verdict for the defendant, if the jury should find that the wall fell as the "sole and immediate result of a wind storm of extraordinary violence," properly submitted the issue of vis major.

5. **PRACTICE: Instruction to Disregard Incomeptent Evidence.** In civil cases where incompetent evidence is withdrawn from the jury, a verdict which has been approved by the trial court will not be set aside by the appellate court on account of error in admitting such evidence in the first instance.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Walter S. Louden* for appellant; *Abbott & Edwards* of counsel.

(1) The instruction offered by appellant at the close of plaintiff's case should have been given. Proving the injury alleged to be the consequence of a negligent act does not prove the negligence charged to have been the cause of it. The burden is on the party alleging negligence to prove it as alleged. Buswell on Personal Injuries, sec. 111; Redmond v. Lumber Co., 96 Mich. 545; Bahr v. Lombard, Ayer & Co., 53 N. J. L. 233; Lamb v. Railroad, 46 N. Y. 271; Kelsey v. Jewett Rec., 28 Hun 51; Boske v. Collopy, 86 Ill. App. 268; Railroad v. Peterson, 86 Ill. 375; Terry v. Railroad, 22 Barb. 574; Haff v. Railroad, 14 Fed. 558; Willoughby v. Railroad, 37 Iowa 432. (2) The Buckingham Investment

Company retained a general control over the work through its architect and superintendent, H. F. Roach, not only with reference to results, but also with reference to methods of procedure, and the Southern Illinois Contruction Company was not an independent contractor, but a mere agent and servant of the proprietor and the rule of respondeat superior would make the Buckingham Investment Company (the proprietor) liable. Refusal of instructions offered on the part of appellant was error. 1 Thompson Commentaries on Negligence, 659; Gilberts v. Beach, 16 N. Y. 606; Heffernan v. Benkard, 1 Robt. (N. Y.) 432; Mumby v. Bowden, 25 Fla. 454; Linnehan v. Robbins, 137 Mass. 123; Railroad v. Shalley, 33 Fla. 397; Speed v. Railroad, 71 Mo. 303.

*Lyon & Swarts* for respondent.

(1) The Southern Illinois Construction Company was an independent contractor. It was employed by the Buckingham Investment Company to construct the building, and the reservation of the latter to pass on the quality and manner of the work, and the quality of the material used, did not relieve the former from its liability for negligence in the construction or erection of the building. Blumb v. City of Kansas, 84 Mo. 112; McKinley v. Railway, 40 Mo. App. 449; Larson v. Railway, 110 Mo. 234; Gayle v. Mo. C. & F. Co., 177 Mo. 427; Crenshaw v. Ullman, 113 Mo. 633. (2) Instruction No. 1, given on behalf of the plaintiff, plainly requires the jury to find from the evidence all the elements therein contained; yet even though the words "from the evidence" were omitted from the instruction, they would be implied. Rogers v. Warren, 75 Mo. App. 271; Milligan v. Railroad, 79 Mo. App. 393.

STATEMENT.—In the year 1903, plaintiff owned and occupied a residence on West Pine boulevard, near Kingshighway, in the city of St. Louis. In the fall and winter of the same year, the defendant, the Southern

Illinois Construction Company, under a contract with the other defendant, the Buckingham Investment Company, was engaged in the erection and construction of the Buckingham Hotel, located near plaintiff's residence, the east wall of the hotel being removed but thirteen feet from the west wall of plaintiff's house. On December twenty-fifth, between two and three o'clock p. m., during a windstorm, a portion of the east wall, which was one hundred and eighty-seven feet ten inches long and from eighty to ninety feet in height, fell toward the east and upon and against plaintiff's house, breaking in a portion of the roof, cracking and marring the west wall, breaking windows and cracking some of the interior decorations. The bricks and mortar from the hotel wall also fell upon plaintiff's yard, breaking and destroying growing trees and shrubbery therein. The suit is to recover the resulting damage.

The negligence alleged is careless, negligent and unskillful construction and erection of the east wall of the hotel and failure to properly brace the same.

The defendants filed separate answers. The one of the Buckingham Investment Company need not be noticed, as a demurrer to the evidence as to it was sustained by the court from which ruling no appeal was taken. In substance, the answer of the Southern Illinois Construction Company is, first, a general denial; second, that it was not an independent contractor but was doing the work under the direction and supervision of the other defendant and in such manner as it directed, and that it was governed and controlled in the performance of the work by the other defendant; and, third, that the wall was caused to fall by "a tornado, cyclone or violent windstorm," raging in the vicinity of West Pine boulevard and Kingshighway, in the city of St. Louis, and that the falling of the wall was "the direct result of said tornado, windstorm and cyclone, and was the act of God."

The evidence shows that the walls of the hotel are

what are known as self-supporting walls, that is, they were built up from the foundation and not upon steel or iron framing; that steel or iron framing was provided for the interior structure of the hotel and this framing was fastened to the outside or brick walls by tie-beams on each floor of the hotel. The face of the east wall was unbroken, that is the facing bricks were all laid lengthwise, and plaintiff's evidence tends to show that this face wall was not properly bound, if bound at all, to the back wall, and that portions of the face wall peeled off the back wall, leaving the latter standing, and fell into plaintiff's yard. It is conceded that the two walls should have been bound together. Defendants' evidence conduces to show that they were bound together by metal bonds, shown by appellants to be the safest and most approved method of binding such walls together.

The hotel is a seven-story structure. The interior framing was built up with the outside walls, a story at a time, and plaintiff's evidence tends to show that the concrete floors (the kind put in to make the building fireproof) should have been laid as the building progressed as they served to brace the brick walls. The evidence shows that all the inside iron and steel framing (except that for the elevators) was in when the wall fell, but that floors had been laid only in the first, second and third stories. There is no other substantial evidence that defendants failed to properly brace the wall, which the evidence shows had been rapidly constructed in cold weather when the cement does not set as rapidly as in warm or moderate weather, and that the wall was what is commonly called a "green wall." Defendants' evidence is that hot water was used to set the cement mortar in the walls.

Plaintiff offered evidence showing the extent of the damage caused to her property by the falling of the wall.

To show that it was not an independent contractor,

the Southern Illinois Construction Company relied upon articles 1 and 2 of its contract made with the Buckingham Investment Company. These articles read as follows:

"Article 1. The contractor shall and will provide all the materials and perform all the work necessary for the erection of a certain fireproof building, seven stories and basement, on the northeast corner of Kingshighway and West Pine boulevard, city block three thousand eight hundred and eighty-three, of the city of St. Louis, Missouri; size of ground, two hundred and fourteen feet and seven inches, on West Pine boulevard; said building to be erected complete according to descriptions as shown on the drawings and revised drawings and described in the specifications and addenda thereto prepared by H. F. Roach, architect, which drawings and specifications and addenda are identified by the signatures of the parties hereto and become hereby a part of this contract.

"Article 2. It is understood and agreed by and between the parties hereto, that the work included in this contract is to be done under the direction of the said architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final. It is also understood and agreed by and between the parties hereto that such additional drawings and explanations as may be necessary to detail and illustrate the work to be done, are to be furnished by the said architect, and they agree to conform to and abide by the same so far as they may be consistent with the purpose and intent of the original drawings and specifications referred to in article 1.

"It is further understood and agreed by the parties hereto that any and all drawings and specifications prepared for the purposes of this contract by the said architect are and remain his property, and that all charges for the use of same, and for the services of said architect are to be paid by the said contractee."

The Southern Illinois Construction Company also relied upon the evidence of Harry F. Roach, who testified that he superintended the erection of the building and saw that it was constructed according to plans and specifications.

C. L. Gray, secretary and manager of the Southern Illinois Construction Company, testified as follows:

"Q. With reference to the east wall, on the twenty-fifth day of December, 1903, how far had you progressed with the construction of that wall? A. The east wall was entirely completed, unless, perhaps, there was some little brick work above the roof line and the centering for the roof, for the concrete floors or what has been described here to-day as false work for concrete floors, was in with the exception of two panels, I mean by panel —we call a panel the space that is surrounded by the floor beams, I mean surrounded by the wall on one side, a tie-beam on either of the other sides, and a floor-beam on the side parallel with the wall, and the centering was all in with the exception of two panels in the roof of the east wall.

"Q. You may tell the jury, if you know, what precautions, if any, were taken during the construction of the building to hold the iron and walls and other parts of the building in place? A. The precautions taken were the usual precautions taken in the construction of a building of that character, which consisted of a system of temporary bracing that would go through the entire structure, beginning with the first or ground floor level, and running to the roof, embracing all iron girders, and by bracing the iron work and by the system I have already explained of the tie beams being built into the several walls, also forming a brace to walls themselves, so far as it is possible to brace any structure of that character."

The most reliable and satisfactory evidence in regard to the windstorm prevailing at the time the wall fell is that of Edward H. Bowie, who was in charge

of the United States Weather Bureau at St. Louis, which evidence is taken from his records kept at the time and is as follows:

"A. The temperature rose from 30 degrees at seven a. m. to maximum of 42 degrees at two-thirty p. m.; then begun an abrupt fall, the thermometer registering 16 degrees at seven p. m. and a minimum of 8 degrees at midnight; making a range of 34 degrees, mean temperature 25 degrees, which was 7 degrees below normal. Brisk winds from the west in the morning, becoming high from southwest at midday; from twelve noon to two-twenty p. m. the velocity was high from the west; at the latter moment the wind veered to northwest and continued a gale until seven p. m., after which time the velocity gradually diminished; maximum velocity 48 miles per hour from the northwest at two-thirty-five p. m.; extreme velocity at same time 58 miles per hour. The day had been practically cloudless until two p. m., when a bank of stratus clouds appeared in the northwest, presaging the approach of a severe squall which swept over the city during the ensuing hour.

"Q. You say the greatest velocity was 58 miles an hour; that was during what time? A. That was at two-thirty-five p. m.

"Q. How long did the wind have to continue at that rate to make that record? A. A fraction over a minute.

"Q. Would that indicate the maximum velocity? A. That is the time that it took one mile of wind to pass the instrument.

"Q. Would that indicate the greatest velocity? A. There may have been squalls during that time which were higher, of course, the wind does not blow steady at any velocity.

"Q. What do you mean by a squall? A. That is the wind blows in gusts, you know, a gust may have been considerably higher than that, we have no means of knowing positively that it was.

"Q. And your instruments would not indicate the velocity of the gust? A. No.

"Q. Did it indicate the velocity of wind which continued during a certain period, would that be the lowest velocity of the wind during that period? A. The one that we gave?

"Q. Yes. A. No, it may have varied on either side, it may have been lower at one time and higher at another.

"Q. That would be the average? A. That would be the average for that minute, yes, sir."

The defendants objected to the following instruction given for plaintiff:

"1. If you find from the evidence that defendant Southern Illinois Construction Company was engaged in building the Buckingham Hotel under the contract with the Buckingham Investment Company, and negligently and unskillfully constructed and erected the east wall, or improperly and insufficiently braced same, and as a direct result it fell on December 25, 1903, and damaged plaintiff's property, then you will find for plaintiff."

Defendants also assign as error the refusal of the court to give the following instructions asked by them:

"1. The court instructs the jury that under the law and the evidence in this case the plaintiff cannot recover against defendant Southern Illinois Construction Company.

"2. The court instructs the jury that if they find from the evidence that the building of said hotel structure had been let out by the defendant Buckingham Investment Company to the Southern Illinois Construction Company under the contract, plans and specifications read in evidence, and if the jury further find from the evidence that the said Southern Illinois Construction Company, at and previous to the time of the falling of the said east wall, was performing its work under said contract, under the direction and control of the defend-

ant Buckingham Investment Company or its authorized agent, and if the jury further believe from the evidence that the said Southern Illinois Construction Company did not know or have reason to know that the said east wall of said hotel structure was being constructed carelessly, negligently and unskillfully, or was being constructed as directed without proper and sufficient bracing, then the jury must find for defendant Southern Illinois Construction Company.

"3. The court instructs the jury that if you believe from the evidence that defendant Southern Illinois Construction Company, had, prior to December 25, 1903, entered into a contract to erect and construct for defendant Buckingham Investment Company, a hotel building on the northeast corner of Kingshighway and West Pine boulevard, in accordance with certain plans and specifications, and under the supervision and direction of one H. F. Roach, acting as architect and superintendent for the Buckingham Investment Company, and if you further find from the evidence that said H. F. Roach did act as superintendent of the work of construcing and erecting the hotel building of the Buckingham Investment Company, and was in the employ of said Buckingham Investment Company, and if you further find and believe from the evidence that said Southern Illinois Construction Company was from said date and up to and including the twenty-fifth day of December, 1903, engaged in the construction of said building under said contract, and if you further find from the evidence that said Southern Illinois Construction Company had up to and including December 25, 1903, erected and constructed said building in accordance with the plans and specifications agreed upon, and under the directions of said H. F. Roach, then you are instructed that plaintiff cannot recover against the Southern Illinois Construction Company."

The jury assessed plaintiff's damages at $1,250. It is not claimed that the assessment is excessive.

BLAND, P. J. (after stating the facts).—1. The mere falling of the wall was presumptive evidence that it had been negligently constructed (Tower v. Haar, 114 Mo. 335), but it is insisted that the appellant was not an independent contractor and for this reason, if for no other, its demurrer to the respondent's evidence should have been given.

In Larson v. Railway, 110 Mo. 234, 19 S. W. 416, the defendant contracted in writing for the excavation and masonry necessary for the erection of an engine house. The contract provided that the excavation should be carried "to such general depth as may be indicated by the engineer" of the railway company, which was done. A house slipped into the excavation made as the engineer directed. On this state of facts, in a suit by the owner of the house against the railway company, the court at page 241, BARCLAY, J., writing the opinion, said: "It is now an accepted rule that supervision of such work may be retained without interfering with the independent action or liability of contractors who have engaged to perform it or subdivisions of it." It was held that the supervision in question went further and that the defendant was liable.

In Gayle v. Missouri Car & Foundry Co., 177 Mo. l. c. 446, 76 S. W. 987, the court said:

"The legal test for the determination of this question is stated by Judge Thompson, in his work on Negligence, vol. 2, p. 899, sec. 22, as follows: 'The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor, or his servants, committed in the prosecution of such work. An independent contractor is one who renders service in the course of an occupation, representing the will of

his employer only as to the result of his work, and not as to the means by which it is accomplished.' This statement of the law was specifically approved in Fink v. Mo. Furnace Co., 82 Mo. 276, in which case it was held that the foregoing statement of the law had been recognized and affirmed in Hilsdorf v. St. Louis, 45 Mo. 98; Morgan v. Bowman, 22 Mo. 538; Clark's Admrx. v. Railroad, 36 Mo. 218; Barry v. St. Louis, 17 Mo. 121. Those cases were reaffirmed in Long v. Moon, 107 Mo. 334, 17 S. W. 810, and again in Crenshaw v. Ullman, 113 Mo. l. c. 639, 20 S. W. 1077."

Appellant contracted to erect the hotel. It hired and discharged its employees at will, pursued its own methods and was not subject to the control of its employer, except as to the results of the work, and we think it was clearly an independent contractor.

The above paragraph applies to appellant's refused instructions, which for the reason herein stated, we think, were properly refused.

2. Appellant argues that instruction No. 1 given for respondent, is erroneous on the ground that after the word "and" connecting the two clauses of the instruction, the jury were not told that they should find *"from the evidence,"* that the appellant negligently, etc., that as it reads the jury were authorized to find negligence from any source outside of the evidence. It was ruled in Baker v. Railway, 52 Mo. App. 602; and Rogers & Powers v. Warren, 75 Mo. App. 271, that the omission of the words "from the evidence" in an instruction is not fatal to it when it is seen from the reading they are implied. That those words are implied in the second clause of the instruction, we think admits of no doubt. This clause is joined to the first one by the copulative "and" and admits of no other interpretation than that the jury, to find for respondent, were directed to find two facts from the evidence: first, that appellant was engaged in building the hotel under a contract, and, second, that it negligently and unskillfully constructed and erected the

east wall or improperly and insufficiently braced the same.

3. In respect to the windstorm, the court gave the following instruction on behalf of appellant:

"1. The court instructs the jury that if you believe and find from the evidence that the building of the defendant, Buckingham Investment Company, was on the twenty-fifth of December, 1903, being constructed and erected with prudence, diligence, skillfulness and care by the defendant, Southern Illinois Construction Company, under the contract with the Buckingham Investment Company shown in evidence, and that said east wall was properly and sufficiently braced and if you further find from the evidence that on said December 25, 1903, a portion of the east wall of said building fell as the sole and immediate result of a windstorm of unusual and extraordinary violence, then raging in the place where said building was in process of erection, if you find from the evidence such a windstorm was then raging, then plaintiff cannot recover in this action, and your verdict must be for the defendant."

No complaint is made that this instruction did not properly submit the issue of *vis major* to the jury.

4. A part of two days of the trial was taken up in hearing evidence (over the objection of the appellant) in regard to the quality of the bricks used in the construction of the east wall of the hotel. Their tensile strength had been tested by expert engineers and they had been chemically analyzed by a competent chemist. The evidence of these experts tended to show that the bricks were of inferior quality, that the material in them was no sufficiently bonded, and that the bricks were porous and would crumble under a pressure that good bricks would easily resist. The chemical analysis showed that they would fuse at a temperature that would not affect good bricks. On the second day of the trial, proceeding along this line of testimony, the trial court,

on a renewal of appellant's objection, speaking to respondent's counsel, said:

"As I told you this morning, I think that the ruling of yesterday was an incorrect one. I think that extends to the use of improper mortar if there was such used, as well as to the use of improper or defective brick, if there was such used. I think your petition charges two grounds of negligence, one negligent construction and erection, and the other negligent bracing or insufficient bracing, negligence in respect of there being not sufficient bracing, and the words 'construction' and 'erection' must under the authorities which I have examined since adjournment yesterday, be held to mean the putting together of the materials that were used, putting together the brick and mortar and wood and the other materials that went to make the construction of the wall. The objection to this question therefore is sustained."

Appellant's counsel contends that while this ruling excluded the incompetent evidence, yet the evidence was of such a nature that no amount of caution on the part of the court could, by a possibility, remove the impression made by it on the minds of the jury. We appreciate the force of this argument, but think that the proper place to make it was to the trial court on the motion for new trial. That court, on account of having both seen and heard the witnesses and marked the effect, if any, the objectionable evidence had on the minds of the jury, was in a much better position than we are to determine whether or not the incompetent evidence influenced the verdict of the jury. For this reason the rule of practice in civil cases (though different in criminal cases) in this State, is that where incompetent evidence is withdrawn from the jury, the verdict will not be set aside on account of the error in admitting it in the first instance. [Anderson v. Railway, 161 Mo. 411, 61 S. W. 874; O'Mellia v. Railway, 115 Mo. 205, 21 S. W. 503; Mc-Ginnis v. Loring, 126 Mo. 404, 28 S. W. 750; Stephens v.

Railway, 96 Mo. 207, 9 S. W. 589; Stavinow v. Ins. Co., 43 Mo. App. 513; Nelson v. Railway, 66 Mo. App. 647.]

We approve the instruction given, and discovering no reversible error in the record, affirm the judgment. All concur.