held in a case cited to us from the Exchequer Chamber [Spill v. Maule, supra] * * * that the expressions in the letter complained of could not be evidence of malice, and the question ought not to have been left to the jury; and on the other hand, authorities [Gilpin v. Fowler and Fryer v. Kinnersley, supra] have been cited in which the court thought the expressions in the letters of themselves furnished evidence which ought to have been left to the jury."

Spill v. Maule, above referred to, has never, so far as I can find, been questioned, and seems to have been repeatedly referred to with judicial approval. The action was for libel contained in a letter, and although the court held that the words complained of were not, in view of the circumstances, so excessive and beyond the proprieties of the occasion as of themselves to afford evidence of malice, Chief Justice Cockburn, in the course of his opinion, said (page 235):

"We are all agreed that the general proposition contended for by the counsel for the plaintiff is right, and that it may be that the language used in a libel, though under other circumstances justifiable, may be so much too violent for the occasion and circumstances to which it is applied as to form strong evidence of malice, upon the issue of whether the communication is covered by the privilege, and that an inference of actual malice may be drawn from its use."

That evidence of malice may be intrinsic to the publication seems to be the accepted rule in Pennsylvania (Neeb v. Hope, 111 Pa. 145, 2 Atl. 568; Jackson v. Pittsburgh Times, 152 Pa. 406, 25 Atl. 613, 34 Am. St. Rep. 659), and in Bacon v. Michigan Central R. Co., 66 Mich. 166, 33 N. W. 181, the proposition had the concurrence of two out of four sitting judges.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

(87 Misc. Rep. 451)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PURDY et al., Tax Com'rs.

(Supreme Court, Special Term, New York County. November, 1914.)

MUNICIPAL CORPORATIONS (§ 967*)—TAXES—PROPERTY SUBJECT—"BUILDING COMMENCED"—"CONSTRUCTION OF A BUILDING."

    The excavation of a plot of land is not a "building commenced" thereon, or the "construction of a building" within Greater New York Charter (Laws 1901, c. 466) § 889a, as added by Laws 1913, c. 324, § 2, providing that a building in course of construction, commenced since October 1, 1912, and not ready for occupancy, shall not be assessed.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2062–2067; Dec. Dig. § 967.*]

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company, against Lawson Purdy and others, Tax Commissioners, etc. Writ granted.

A. S. Lyman, of New York City, for relator.
Frank L. Polk, Corp. Counsel, of New York City, for respondents.

BIJUR, J. This is a writ of certiorari to review the 1914 assessment levied October 1, 1913, on the Hotel Biltmore. The controversy arises out of the enactment of section 889a of the Greater New York Charter (passed in 1913):

"A building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed."

The facts are not in dispute. It is conceded by the city that the Hotel Biltmore was not ready for occupancy October 1, 1913. The question to be decided is whether either the "building" or the "construction of the building" (whichever way the statute be read) was "commenced" before October 1, 1912. It is further conceded by the city that no work of any kind had prior to October 1, 1912, been done on the plot occupied by the Hotel Biltmore, other than mere excavation (and excepting certain work done in connection with the railroad terminal improvement which ·has no bearing upon the present issues). It is also established that the relator had excavated the plot to enable the erection of the building, and that the excavation had been almost completed on October 1, 1912. The bald question is therefore presented for decision whether the excavation of the plot is the commencement of the building or of the construction therefor, within the terms of the act.

The learned corporation counsel urges that, as the statute is one of exemption from taxation, it must be strictly construed against the taxpayer—a principle of interpretation which may be conceded, but is really of little practical aid in the premises. Nor do I find that I can be guided by cases cited on behalf of the city, in which similar language has been held to include excavation, because those cases invariably relate to the time of the attaching of mechanics' liens—a purpose which manifestly gives an entirely different significance to the language employed. See, for example, Pusey & Jones v. Pennsylvania Paper Mills (C. C.) 173 Fed. 634, 647; Mutual Benefit Life Ins. Co. v. Rowand, 26 N. J. Eq. 390; Brooks v. Lester, 36 Md. 70; Kansas Mortgage Co. v. Weyerhaeuser, 48 Kan. 335, 29 Pac. 153, 156.

The statute under consideration provides that "a building in course of construction * * * shall not be assessed," and there is the further qualification that such exemption shall apply only when the building (or its construction) has been "commenced since the preceding first day of October" and that it be "not ready for occupancy." It is a *"building"* which the statute exempts. Certainly a mere excavation was not in contemplation, when the proviso was added that it should not be "ready for occupancy." Indeed, the excavation is not exempt from assessment; the land is subject to tax, and the question whether its value has been enhanced by the excavation may quite properly enter into consideration in fixing the assessment. It seems to me to be plain that in enacting this statute the Legislature had two elements under consideration—the building and the land respectively—which were to be, and are, treated separately. In the light of the terms of the statute and its purpose, I do not believe that the commencement of the excavation is the commencement of the building.

Writ granted.