PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PURDY et al., Com'rs of Taxes and Assessments. (No. 7243.)

(Supreme Court, Appellate Division, First Department.  May 7, 1915.)

1. MUNICIPAL CORPORATIONS ⊙═967—TAXATION—BUILDINGS UNDER CONSTRUCTION.

Under Greater New York Charter, § 889a, as added by Laws 1913, c. 324, providing that a building under construction, commenced since the preceding 1st day of October and not ready for occupancy, shall not be assessed, and in view of section 892 (Laws 1901, c. 466), as amended by Laws 1903, c. 454, declaring that the assessment books shall show the sum for which the land assessed would sell for as improved and if wholly unimproved, buildings which have taken less than one year to build, and completed before October 1st, the day of assessment, are exempt for that year, as are those begun after October 1st, and still uncompleted, though those begun before October 1st, and not completed before the following October, are assessable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2062–2067; Dec. Dig. ⊙═967.]

2. MUNICIPAL CORPORATIONS ⊙═967—TAXATION—"BUILDING COMMENCED"—CONSTRUCTION.

The beginning of excavations for foundations for a large building marks the commencement of the construction, within the Greater New York Charter, § 889a, providing that a building in the course of construction, commenced since the preceding 1st day of October and not ready for occupancy, shall not be assessed; and hence, where the excavations were commenced before October 1st, the building, though not completed by the 1st of the following October, may be assessed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2062–2067; Dec. Dig. ⊙═967.]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company, against Lawson Purdy and others, as Commissioners of Taxes and Assessments, etc.  From an order reducing an assessment (87 Misc. Rep. 451, 150 N. Y. Supp. 896), respondents appeal.  Order reversed, and writ dismissed.

See, also, 153 N. Y. Supp. 1137.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Curtis A. Peters, of New York City, for appellants.
George H. Walker, of New York City, for respondent.

HOTCHKISS, J.  This is a proceeding to review the 1914 assessment for purposes of taxation of the lot of ground covered by the Biltmore Hotel, in this city.  The assessment covered both lot and building, and the relator claims that the building was exempt:  This claim rests upon section 889a of the Greater New York charter, which provides that:

"A building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed."

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The question turns upon whether the building was in course of construction before the 1st day of October, 1912. The premises constitute the westerly portion of the block between Forty-Third and Forty-Fourth streets, Madison and Vanderbilt avenues. The land assessment was $2,150,000, and for the building and land $5,750,000.

[1, 2] Prior to July, 1912, the work of excavation had been begun, and on and prior to the 1st day of October, 1912, a considerable portion of the excavation ultimately necessary for the foundations of the building structure and for the sidewalk vaults had been completed, although it was not until some time thereafter that any cement or other building material used in and about the foundation work, or any other material entering into the superstructure itself or the grillage sustaining the same, was either delivered upon the premises or set. The building was completed some time between October and December, 1913. There is no finding to the contrary, and the evidence justifies the inference that, from the time the work of excavation began, the building operations continued in due course and without unusual interruption. The interpretation contended for by the relator, and which was adopted by the court below, is that, within the meaning of the charter, construction of a building has not "commenced" until something has been done towards setting in permanent place, or at least bringing to the site with the intention in due course to incorporate it into the work, some of the component parts of the building structure or its foundations. I think this is altogether too narrow an interpretation of the statute, and one which foils its purpose. Section 892 of the charter, as amended by Laws 1903, c. 454, provides that the assessment books shall show the sum for which the parcel assessed "would sell for if wholly unimproved," and also the sum for which it would sell "with the improvements, if any, thereon." The latter sum is the value on which the assessment is to be based. It is manifest that, in the case of lands on which buildings are in course of construction, any attempt to ascertain the increase in sale value of the land, due to the presence of an unfinished building, would, in many cases, be exceedingly difficult, if not impossible. What, if any, value, in the market, an uncompleted building would add to the ground, would depend largely on the question of the extent to which the work already done adapted itself to the purposes of a purchaser. To one the proposed improvement might be wholly undesirable, while to another it might present elements of value sufficient to induce a large bid.

But, under the most favorable conditions, the attempt to value the land, plus the improvement, might be no easy matter. Where the building operation had progressed to but a small extent, or where it was substantially finished, the task would not be so difficult. But at intermediate stages, where the structure, so far as it had progressed, might commonly be found to consist of a mere congeries of parts, it would, in the nature of things, be little more than guesswork for any one to say to what extent, if any, they added to the sale value of the land. The evident purpose of the section in question (889a) was to strike an average, to give to the property owner the benefit of a total exemption during a certain period of construction, and thereafter to

assess the full value of the improvement. To define and determine this period by any fractional or other description of the completed work, as one-quarter or one-half thereof, would be too vague for practical purposes, and but an invitation to interminable disputes. The draftsmen of the section accordingly adopted an arbitrary period of one year which they made applicable in all cases where building operations were in progress. They said to the property owner: During this period your improvement, whatever may be its stage of completion, shall be exempt in toto, but thereafter the exemption shall cease. October 1st is assessment day. If on that day it is found that construction of your building was begun after the 1st day of the October next preceding and is still unfinished, the assessment shall include nothing on account of your improvement; otherwise the provisions of section 892 shall be effective. The practical working of the exemption is as follows: Buildings which have taken less than one year to build, and are completed before October 1st, are exempt for that year. Buildings begun after October 1st, and still uncompleted on the 1st of the succeeding October, are also exempt. But buildings begun before October 1st, and not completed on the 1st of the October following, are assessable. Unless the language of the section is so clear and unambiguous that the intention to create the exemption indisputably appears, such construction will not be given to it. People ex rel. Westchester Fire Ins. Co. v. Davenport, 91 N. Y. 574. It is a fact too notorious to be ignored that the modern type of high steel building, with which the most valuable portions of our city are so largely improved, and of which the building in question is a type, necessarily requires foundations the excavations for which are very deep, and the cost of which is a material part of the total cost of construction. Also that the work involved in such excavations in many cases extends over a considerable length of time, as in the present case, where it apparently occupied over three months.

I think the statute plainly contemplated that the exemption period should begin from the time when any material portion of the work incident to the new building has been begun on the proposed site, including the time when excavation of the ground to receive the foundations or other portions of the structure, which are to be placed below the surface, has been commenced, with a view to its continuance and completion in due course, and that it would be entirely outside of the purpose of the statute to allow an owner the benefit of the period during which this preliminary but most essential work was in progress, and construe his period of exemption as beginning only when the actual construction of some portion of the physical thing that subsequently becomes the building had been commenced. In Pusey & Jones v. Penna. Paper Mills (C. C.) 173 Fed. 634, 647, the question arose under a mechanics' lien statute, which in the case of original construction, as between liens thereunder and mortgage or other liens placed prior thereto, was so expressed as to relate back and take effect "as of the date of the visible commencement upon the ground of the work of building the structure or other improvement." After referring to the words of the statute, as above quoted, the court said:

"This calls for something of such a marked and substantial character as to attract attention and convey notice that a new structure or improvement has .been begun."

Continuing, the court cites, holding that the following acts were not to be considered as "commencement  *  *  *  of the work of building," to wit: the mere placing of lumber or materials on the ground; the staking out of the building or line of foundations; the clearing of the land of brush and stumps and putting it in a condition to begin work on the building proper; the demolition of an old building or the clearing away of the débris after a fire. The court further said:

"The excavation for the foundation of the new structure is the accepted test of its commencement, to which mechanics' liens relate.  *  *  *  And even this must have so far progressed as to be readily observed. A mere scratching of the ground is not enough.  *  *  *  'The removal of the sod, the turning over of the soil, or such other equivocal acts as would not fairly indicate the purpose to build do not constitute the commencement of the building. To satisfy the law, so much must be done of a permanent character as will apprise observers that building is in progress.' Jacobus v. Mut. Ben. Life Ins. Co., 27 N. J. Eq. 604."·

In Brooks v. Lester, 36 Md. 65, 70, under a Maryland statute, where the date of the priority of liens depended upon the date of the "commencement of the building," the Court of Appeals of Maryland said:

"What the law means by these terms is some work and labor on the ground, the effects of which are apparent, easily seen by everybody, such as beginning to dig the foundation, or work of like description, which every one can readily see and recognize as the commencement of a building."

These cases are persuasive inasmuch as they construe language similar to that used in the section of the charter now under consideration in a manner consistent with what I conceive to be its plain meaning, having regard for the purpose it was intended to subserve.

The order appealed from should be reversed, with costs, the writ dismissed, and the assessment confirmed as levied, with costs. Settle order on notice.

CLARKE and DOWLING, JJ., concur.

SCOTT, J. (dissenting). This is a certiorari proceeding instituted to review the 1914 assessment for purposes of taxation of real property in the city of New York, known as the Hotel Biltmore, occupying the block bounded by Madison and Vanderbilt avenues, Forty-Third and Forty-Fourth streets. The assessment was made as of October 1, 1913, and it is alleged by the relator and has been found by the court at Special Term that the construction of the hotel building had been commenced since the preceding October 1st (1912), and that on October 1, 1913, it was still in process of construction and not yet ready for occupancy. The reduction of the assessment is claimed under section 889a of the Greater New York charter (chapter 324, Laws of 1913) which reads as follows:

"A building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed."

The question in controversy is when the construction of the hotel building was commenced, within the meaning of the section. The evidence is that prior to October 1, 1912, the lot was excavated in order to provide for the erection of the building in accordance with the plans already filed in the building department, but that no constructive work was done prior to October 1, 1912, the first work, other than excavation, being on or about November 15, 1912, when concrete was placed for the grilling foundations designed to support the columns of the hotel building. Under these circumstances, when did the construction of the building commence? In other words, does the preparation of the ground for the building constitute the commencement of the construction of the building?

In construing statutes there are certain fundamental rules which are so well established that they may fairly be termed elementary. One is that they are to be read according to the natural and obvious import of their language, without resorting to a subtle or forced construction either limiting or extending their effect, and another, perhaps the basic rule, is that statutes shall be so construed as to give effect to the apparent intent of the Legislature. In seeking to discover the intent of the Legislature, it is proper to consider other sections of the same act, as well as independent statutes in pari materia.

The particular word to be defined, in the act under consideration, is the word "construction," as applied to a building. The dictionary definitions of the words "building" and "construction," which have frequently been referred to by the courts, are such as to exclude a mere hole in the ground upon which it is intended to erect or construct a building. In Black's Law Dictionary a building is defined as:

"A structure or edifice erected by the hand of man, composed of natural materials, as stone or wood, and intended for use and convenience"—citing Truesdell v. Gray, 13 Gray (Mass.) 311; State v. Moore, 61 Mo. 276; Clark v. State, 69 Wis. 203, 33 N. W. 436, 2 Am. St. Rep. 732.

In our own state the word is defined as follows, in Rouse v. Catskill & New York Steamboat Co., 59 Hun, 80, 13 N. Y. Supp. 126:

"The word 'build' is derived from the word 'bold,' meaning a dwelling. A building is defined to be 'a structure in the nature of a house built where it is to stand.' Murray's Dictionary. 'As commonly understood, a house for residence, business, or public use, or for shelter of animals, or storage of goods.' Century Dictionary. And very generally, though not always, the idea of a habitation for the permanent use of man, or an erection connected with his permanent use, is implied in the word 'building.' Bouvier defines the word as 'an edifice erected by art and fixed upon or over the soil, composed of different pieces of stone, brick, marble, wood, or other proper substance connected together, and designed for permanent use in the position in which it is so fixed.' A building is a part of the land. One would not call a tent a building. As said in one case of the word 'building': 'In its broadest sense it can mean only an erection intended for use and occupation as a habitation, or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed.' Truesdell v. Gray, 79 Mass. (13 Gray) 311."

See, also, Bouvier's Law Dictionary; Webster's Unabridged Dictionary; Standard Dictionary; Am. & Eng. Encyclopedia of Law (2d Ed.) vol. 4, p. 995.

So, also, the word "construct" is by the same authorities defined, as is indicated by its Latin derivation, as the act of bringing together and uniting materials so as to create a structure or building. The digging of an excavation, within which to erect a structure, is not, in my opinion, according to the natural and customary meaning of the words, an act of construction of a building.

When we come to consider the section of the charter under which the exemption is claimed, we find that it follows immediately upon a section (889) which requires the assessors, in making up the assessment list, to separately state, as to each parcel assessed, "the sum for which, * * * under ordinary circumstances," it "would sell if * * * wholly unimproved, and * * * the sum for which * * * the same parcel of real estate would sell with the improvements, if any, thereon." In other words, the assessors are to separately estimate the value of the parcel, and the value of the improvement thereon; each being estimated according to the assumed selling value. The purpose of section 889a undoubtedly was to encourage building by extending to a builder a limited exemption from taxation while his building was going on. But for this section it would be the duty of the assessors, in valuing a parcel of land occupied by an uncompleted building, to estimate something for the partially completed improvement. It was to avoid that injustice, as I consider, that the section was adopted. An excavation in a lot would ordinarily add nothing to the value of the lot to a purchaser unless he desired to erect upon it a building very similar to that for which the excavation had been designed. In many cases it would doubtless detract from the value.

In my opinion the ordinary and natural meaning of the words used, as well as the obvious intent of the Legislature, requires us to hold that the "construction of a building," within the meaning of section 889a of the charter, is that it applies to actual construction, and not to the preparation of the ground to receive the structure.

For this reason I am of opinion that the order appealed from was right, and should be affirmed, with $10 costs and disbursements.

INGRAHAM, P. J., concurs.