PEOPLE ex rel. NO. 176 WEST 87TH ST. CORPORATION, Relator, *v.* JACOB CANTOR et al., Tax Commissioners, Respondents.

(Supreme Court, New York Special Term, April, 1919.)

Taxes — building in course of construction — certiorari — Greater New York Charter, § 889-a.

Section 889-a of the Greater New York Charter which, as amended in 1913, provides that " a building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed," must be interpreted in the light of the Building and Tenement House Laws, and a building is no longer " in course of construction " when it is completed pursuant to the requirements of law.

Where, therefore, the construction of an apartment house was completed in accordance with the laws and plans approved by legal authority, prior to October 1, 1917, at which time all of the apartments were leased and the rent for that month paid in advance without deduction or allowance being made because of an alleged unfinished condition of the building, it is not exempt from taxation though on October 1, 1917, all the steam radiators had not been installed and the connection of many of the gas ranges had not been made.

CERTIORARI to review an assessment upon real property.

Stoddard & Mark, for relator.

R. M. de Acosta and M. Strasburger, for respondents.

GREENBAUM, J. The assessment of the property under review was entered upon the annual record of assessed valuations for 1918 as follows: " Unimproved, $185,000; improved, $750,000." The land valuation is not attacked. The assessment of the building is assailed upon the following three grounds: That it was not ready for occupancy on October 1, 1917; that it was overvalued, and finally, that a former board of commissioners of taxes and assessments had reduced its assessed valuation by $100,000, which action a succeeding board illegally reversed, in reinstating the original assessment. The condition of the building, a thirteen-story apartment house, on October 1, 1917, was as follows: The masonry work, tiling, plastering, marble work and plumbing were completed. The elevators were in operation. The electric light supply had been installed, with a master meter, from which the apartments obtained their light. Ninety per cent of the gas meters were ready for use. The relators submitted testimony tending to show that on October 1, 1917, there were only about a dozen steam radiators out of a requisite 600 installed in the building; that owing to delay in shipments by the manufacturers, occasioned by war conditions, it took until about the middle of November before all the radiators were ready for use; that the gas ranges had not been connected by October 1, 1917. It was established that many workmen of various kinds were engaged during October and November and a part of December in

scraping and polishing the floors; in installing electric lighting receptacles, switches and individual meters, as well as interior telephones; in affixing chandeliers; in painting various parts of the interior; in carpentering, such as adjusting doors, putting down thresholds, placing locks on doors, fastening hardware and building inclosures about radiators. It was also established that a number of stores on the ground floor in the building had not been plastered nor floored. On September eighth, upon the relator's application to the bureau of buildings, a certificate of occupancy was issued. On September 21, 1917, an application was made to the tenement house commissioner of the city of New York for a certificate of completion, in which the relator stated that " said building has been erected and completed in accordance with law and with the plans approved by the tenement house department." There is some evidence that permission was granted on October second by the department to the relator to allow tenants " to move in." The final certificate, however, was issued on October 9, 1917. All of the apartments, seventy-three in number, had been leased prior to October 1, 1917, the occupancies to commence October 1, 1917; the rent for each apartment was paid in advance, and no deductions or allowances were made because of the alleged unfinished condition of the building. No tenant was called to testify as to the condition of his apartments. Whether or not the building was exempt from taxation on October 1, 1917, the tax day, depends upon the interpretation of section 889-a of the Greater New York Charter (amended by chapter 324, Laws of 1913). That section provides as follows: "A building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed." In *People ex rel. New York Central & H. R. R. R. Co. v. Purdy,* 216 N. Y. 704, the Court

of Appeals reversed the Appellate Division on the
dissenting opinion of Scott, J., who stated (167
App. Div. 637) that " The purpose of section 889-a
undoubtedly was to encourage building by extending
to a builder a limited exemption from taxation while
his building was going on. But for this section it
would be the duty of the assessors in valuing a
parcel of land occupied by an uncompleted building
to estimate something for the partially completed
improvement. It was to avoid that injustice, as
I consider, that the section was adopted." The
construction of the building under review was
" commenced since the preceding first day of Octo-
ber." The inquiry, therefore, narrows itself to the
consideration of the question whether on October 1,
1917, the building was " in course of construction,"
and " not ready for occupancy." The use of the latter
quoted words implies that a building may be ready
for occupancy before actual completion, that is, while
" in course of construction," and hence that in such
case it would not be entitled to exemption. It would
also seem to follow that if a building is " erected and
completed in accordance with law," it may not be said
to be any longer " in course of construction," and
therefore not entitled to exemption. In other words,
exemption only arises when the building is both " in
course of construction " and " not ready for occu-
pancy." When is a building deemed to be " in course
of construction? " It seems to me that the act should
be interpreted in the light of the Building and Tene-
ment House Laws in compliance with the provisions
whereof the building in this proceeding was erected.
The construction of a building may not be commenced
without a permit of the tenement house department.
§ 120. Section 121 of the act provides: " No
building hereafter constructed as or altered into a

tenement house shall be occupied in whole or in part for human habitation until the issuance of a certificate by the department aforesaid that said building conforms in all respects to the requirements of this chapter." The necessary effect of the foregoing provision is that when a building has been erected in all respects in conformity to the requirements of the act, it is a completed building and may then "be occupied in whole or in part for human habitation." There is nothing in the Tenement House Law which concerns itself with stoves, heating apparatus, interior decorations or improvements. Of course, if a landlord leases an apartment upon the understanding, express or implied, that the tenant is to be furnished with steam heat, gas ranges for cooking or other improvements and is to have the rooms decorated in a certain style, it might be said as between the landlord and tenant that until all these fixtures and conveniences are supplied the apartment is "not ready for occupancy." But it seems to me that the exemption act must have contemplated that a building is no longer "in course of construction" when it is completed pursuant to the requirements of law. Improvements in the interior of a building, as the erection of partitions or installations of gas stoves, lighting fixtures, steam radiators, may not be regarded as structural parts of the building. It is a well recognized canon of interpretation of statutes that words in common use are to be construed according to their plain and ordinary significance. The act under review mentions a "building" and makes no reference to improvements or fixtures. Bouvier (ed. 1914) defines a building as "An edifice, erected by art, and fixed upon or over the soil, composed of stone, brick, marble, wood or other proper substance, connected together, and designed for use in the position in which it is so fixed."

In this age of steel, the word " steel " might well have been included in the specifications of materials entering into the construction. A fixture is something " affixed or attached to a building and used in connection with it, movable or immovable." See Bouvier, *supra*. A fixture may under rules of law become or be considered as a part of the realty or freehold by physical annexation to the building. It presupposes the existence of a building to which it is affixed. It is not important here to determine whether the gas stoves and steam radiators are to be regarded as personal or real property. The fact is that they are only fixtures and in that sense are to be distinguished from the building. For taxation purposes as between the state and the owner of real property, it would seem to me to be a strained interpretation of section 889-a of the charter to hold that the legislature intended to have read into it the special agreements or covenants between landlords and tenants as to furnishings and fixtures which have no relation to the matter of the construction of the building, which alone is the state's concern. The relator in its applications for certificates of occupancy to the building and tenement house departments expressly asserted that the building was completed in accordance with the laws and with the plans approved by the legal authorities prior to October 1, 1917, and it should not now be heard to say that the building was not then completed. Nor does the tardy issuance of a certificate by the tenement house department on October 7, 1917, alter the fact that the building was completed before October 1, 1917, as the evidence conclusively has established. Assuming, therefore, that all the steam heat radiators had not been installed by October 1, 1917, and that many of the gas ranges had not then been connected with the gas pipes, it nevertheless follows that the building was not

exempt from taxation. As to the remaining questions presented to the court, it will suffice to say that the evidence satisfactorily establishes that the assessors overvalued the building to the extent of at least $100,000. This conclusion makes it unnecessary to pass upon the question whether reinstatement of the reduction of $100,000 in the assessment was illegal. The assessment will be reduced by the sum of $100,000.

Ordered accordingly.