## Richmond

O. W. McClung v. County of Henrico.

May 4, 1959.

Record No. 4924.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*W. Jerry Roberts* (*White, White & Roberts*, on brief), for the plaintiff in error.

*William F. Parkerson, Jr., Commonwealth's Attorney* (*Donald R. Howren, Assistant Commonwealth's Attorney*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

O. W. McClung, hereinafter referred to as the defendant, was arrested on a warrant charging that he had commenced to erect on February 25, 1958, after his building permit had expired, a veterinary hospital building on land owned by him in Henrico County,

Virginia, in violation of the county zoning ordinance, as amended. He was convicted in the county court and appealed to the circuit court. On March 27, 1958, the case was submitted to the judge of the circuit court on a plea of not guilty and a stipulation of facts agreed upon by the defendant, his counsel, and the attorney for the Commonwealth. After hearing argument of counsel, and considering the memoranda of authorities submitted, the court in a written opinion found the defendant guilty as charged in the warrant, and on April 18, 1958, fixed his punishment at a fine of $10.00. To this judgment we granted a writ of error and supersedeas.

In his assignment of errors the defendant makes the following contentions:

(1) The court erred in finding that the defendant had not started construction of the veterinary hospital building within ninety days after an amendment to the zoning ordinance which became effective on January 9, 1958.

(2) The conviction of the defendant was contrary to the law and the evidence.

The facts are as follows: The defendant applied to the Board of Zoning Appeals of Henrico County, hereinafter referred to as the Board, on July 3, 1956, for a permit to construct and operate a veterinary hospital with boarding kennels on a parcel of land owned by him, zoned as D-Agriculture. Under this zoning classification a veterinary hospital operated in conjunction with boarding kennels was a permitted use provided a use permit was granted by the Board after a public hearing. The Board ordered that the application be denied, and the defendant by certiorari appealed from the order to the circuit court of the county.

On September 23, 1957, the circuit court held that the portion of the zoning ordinance which required a use permit was invalid for failure to provide a proper standard of decision.

The defendant then applied for a building permit to construct a veterinary hospital on his land. The permit was issued on October 7, 1957, and his plans for the building were approved by the building inspector of the county.

On October 9, 1957, the county zoning ordinance was amended, deleting veterinary hospitals as a permitted use in an agricultural district. Another section of the ordinance, which permitted veterinary hospitals in a B-4 Business District, remained in force.

During the week of October 10, 1957, the defendant cleared trees and stumps from the land and hauled a quantity of stone to the

proposed building site. On October 17, 1957, the land was surveyed, stakes were set for all four corners of the building and marked with grade level. On October 20 the front portion of the cleared land was graded to a depth of approximately two feet, extending back a distance of thirty-eight feet on a level with the remaining land of the site. Shortly before Christmas, 1957, the defendant entered into a contract to have trenches dug and concrete poured therein for the foundation.

On January 10, 1958, the building inspector served notice on the defendant, advising him that the building permit heretofore issued had expired and was no longer valid because he had not started construction of the building within ninety days after the effective date of the amendment to the zoning ordinance.

The building inspector visited the building site on January 25, 1958, and found that the only additional activity evident on the ground from his prior inspection on January 10 was the erection of batter boards and the posting of the building permit on a tree. The inspector found on February 7, 1958, that some of the land had been dug for the footings, and on February 25, between twenty-five and thirty feet (in length) of trenches had been dug and concrete poured in the trenches.

Five photographs were attached to the stipulation of facts showing the condition of the land on January 10 and on March 3, 1958.

It was stipulated that under the administrative practices of the building inspector's office a building permit is not required for any work on land up to and including the digging of the trenches, and that a building permit is required only before concrete can be poured into the prepared trenches.

It was further stipulated that § 200.9 of the Henrico County building code defines a building in the same language as does § 2-A-8 of the county zoning ordinance, and that § 200.43 of the county building code defines a "structure" as that which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.

The defendant contends in his first assignment of error that construction of the building had been started within the ninety-day period required by § 38 of the Henrico County zoning ordinance.

The pertinent part of § 38 of the ordinance reads as follows:

"Nothing herein contained shall require any change in the plans, construction, size, or designated use of any building, structure, or

part thereof for which a building permit has been granted before this ordinance becomes effective, and the construction of which from such plans shall have been started within ninety days after this ordinance becomes effective; * * *."

The defendant asserts that when he cleared the land of trees and stumps, had the land surveyed, set stakes marking the four corners of the proposed building with grade levels, graded and leveled the land, hauled some stone to the site, and entered into a contract to dig the trenches and pour concrete for the foundation he had started construction within the meaning of the language of § 38 of the zoning ordinance.

In support of his contention, the defendant strongly relies on the case of *In Re: W. P. Rose Builders' Supply Co., et al.*, 202 N. C. 496, 163 S. E. 462. He states that this case is the only one he has been able to find in his research dealing with the precise question of law involved in the case at bar. The Rose Company owned a building in Goldsboro, North Carolina, which had been formerly used as a bus station and desired to use it as a gasoline station. A building permit was obtained to install "two gas pumps on the present bus station." Subsequent thereto the zoning ordinance was amended prohibiting certain businesses in the zone where the property was located. The Rose Company was given ninety days in which to start construction under a provision of the zoning ordinance which is substantially in the same language as § 38 of the Henrico County ordinance. Within the ninety-day period the Rose Company placed upon the premises "a grease dispenser and goods to be sold out of a filling station." The city contended that the company had not started to install the gas pumps within the ninety-day period provided for in the ordinance and its building permit had expired. In construing the language of the ordinance the court was of the opinion that the company had started construction in that the word "started" used in the ordinance was synonymous with "commence" or "begin," and cited with approval the following definition of the commencement of a building:

"The 'commencement' of a building, within the mechanic's lien law, is the doing of some act upon the ground on which the building is to be erected, and in pursuance of a design to erect, the result of which would make known to a person viewing the premises, from observation alone, that the erection of a building on the land had been commenced. Work done in breaking the ground for a cellar is a com-

mencement of a building because it must have changed the appearance of the ground so as to show the purpose of the work."

The court held, however, that whether the Rose Company had started the installation of the gas pumps in good faith was a question of fact for the jury to determine.

The case at bar is readily distinguished from the *Rose Company* case, *supra.* In that case the court was dealing with an existing building or structure and use of the building had begun. It was an appeal from the judgment affirming a decision of the Board of Adjustment approving the building inspector's refusal to allow the installation of the gas pumps after the permit had expired. The court said whether the Rose Company had started the installation of the gas tanks was a question of fact for the jury. The case at bar is an appeal from a conviction of the circuit court where the defendant waived a jury and the court, upon its finding of facts, held that the defendant had not started construction before his permit had expired. The finding of facts by the trial judge has the weight of a jury verdict. Sec. 8-491, Code of 1950; 1 Mich. Jur., Appeal and Error, § 276, pp. 705, 706. See also 58 Am. Jur. § 186, p. 1042.

Practically all the other authorities relied on and cited by the defendant define the word "commencement" within the meaning of the mechanics' lien law and the definitions are similar to the one given in *In Re: W. P. Rose Builders' Supply Co., supra.*

Of course, zoning laws and mechanics' lien statutes were enacted for entirely different purposes and manifestly give an entirely different significance to the language employed. *People, ex rel. New York Cent. & H. R. R. Co.* v. *Purdy, et al.,* 87 Misc. Rep. 451, 150 N. Y. S. 896. See also 216 N. Y. 704, 111 N. E. 1097, reversing on dissenting opinion of Scott, J., 167 App. Div. 637, 642, 153 N. Y. S. 300, 301, reinstating opinion in 87 Misc. Rep. 451, 150 N. Y. S. 896.

The defendant argues that zoning ordinances are in derogation of the rights of private property and where exceptions appear in favor of the property owner they should be liberally construed in favor of such owner.

It is a settled rule of construction in this state that where a statute is plain and unambiguous there is no room for construction by the court and the plain meaning and intent of the statute will be given it. *Temple* v. *Petersburg,* 182 Va. 418, 422, 423, 29 S. E. 2d 357, 358; *Great A. & P. Tea Co.* v. *Richmond,* 183 Va. 931, 948, 33 S. E. 2d 795, 802, 803; *South Hill* v. *Allen,* 177 Va. 154, 164, 12 S. E. 2d 770, 773; 17 Mich. Jur., Statutes, § 34.

In the field of zoning law, the interpretation of a zoning ordinance is controlled by the principle that words in common use must be given their plain and natural meaning in the absence of any showing that such words were used in any other than their usual and ordinary sense. *Foster* v. *Mayor of City of Beverly,* 315 Mass. 567, 53 N. E. 2d .693, 151 A. L. R. 737, 740; *Killian* v. *Brith Sholom Congregation,* (Mo. App.), 154 S. W. 2d 387.

The obvious intention and purpose of the Board of Supervisors when it enacted § 38 of the county zoning ordinance was to protect the rights of the holder of a building permit after an amendment to the zoning ordinance has placed his property in a non-conforming category, if he starts construction of a building or structure within the time prescribed.

Webster's New International Dictionary, 2d ed., p. 572, defines the word "construction" as follows: "(1) Process or art of constructing; act of building; erection; act of devising and forming; fabrication; composition; also a thing constructed; a structure. * * * (3) Form or manner of building or putting together the parts of anything; structure; arrangement." The word "construct" is defined as: "To bring together, to construct, to pile up, to set in order. * * * (2) To put together the constituent parts of (something) in their proper place and order; to build; form; make; as, to construct an edifice."

In *Scharff* v. *Southern Illinois Construction Co.,* 115 Mo. App. 157, 170, 92 S. W. 126, 130, the court said: "* * * Words 'construction' and 'erection' must, under the authorities * * * be held to mean the putting together of the materials that were used—putting together the brick and mortar and wood and other materials that went to make up the construction * * *."

The county building code defines a "structure" as that which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.

Under the stipulation it was agreed that the building inspector would testify that under the administrative practice of his office a building permit was not required for work on land, but before concrete footings could be poured for the foundation of a building a permit was required. While administrative practices are not binding on the courts they are accorded due respect and are entitled to some weight. *Prentice* v. *City of Richmond,* 197 Va. 724, 730, 90 S. E. 2d 839, 843.

In *Sellers v. Bles,* 198 Va. 49, 56, 57, 92 S. E. 2d 486, 491 we stated that a sub-contractor who was employed to cut down trees and remove or burn the trunks, boughs or twigs in preparation for the construction of a dam cannot be fairly said by so doing to have undertaken a work of construction whatever may be the general contractor's undertaking.

In *Arkansas Power & Light Co.* v. *Federal Power Commission,* 8 Cir., 125 Fed. 2d 982, 984, 985, the petitioner had been licensed to construct three dams and its license had been revoked as to the third dam because the petitioner had not commenced construction within the prescribed time, although several thousand yards of earth at the base of the site for the dam had been excavated for exploratory trenches, a portion of the foundation had been excavated, and approximately $10,000 had been spent on the work done. The Federal Power Act, 16 U.S.C.A. § 791a, *et seq.,* provided that the Commission could terminate the license in case the licensee should not commence actual construction of the project works within a prescribed time. The Act defined "project works" to mean the physical structures of the project. The court upheld the Commission's findings and said that the work done was preliminary work incidental only to commencement of construction and did not constitute commencement of construction of the project works.

It is to be noted that the terms of the federal statute are similar to the terms of the county zoning ordinance as the one speaks of commencement of construction of physical structures and the other refers to the start of construction of a building or structure.

In *People, ex rel. New York Cent. & H. R. R. Co.* v. *Purdy, et al., supra,* 153 N. Y. S., at p. 301, the court said that the word "construct" is defined by the authorities, as indicated by its Latin derivation, as the act of bringing together and uniting materials so as to create a structure or building. The digging of an excavation, within which to erect a structure, is not, according to the natural and customary meaning of the words, an act of construction of a building.

In *Pusey & Jones* v. *Penna. Paper Mills,* 173 Fed. 634, 647, the court held that the following acts were not considered as "commencement" of the work of building: "* * * the mere placing of lumber and materials on the ground; the staking out of the building or line of foundations; the clearing of the land of brush and stumps and putting it in a condition to begin work on the building proper * * *."

The evidence shows that all the defendant did on the premises from October 7, the date of the issuance of the building permit,

through October 20 was to remove the trees and stumps, grade the front portion of the land along the building line to a depth of approximately two feet for a distance back of thirty-eight feet to the level of the back portion, set up stakes for the four corners of the building, mark the grade level and haul a quantity of building stone to the site. There was no further activity on the land for more than seventy-five days. Although the defendant contracted around Christmas, 1957, to have trenches dug and concrete poured for the foundation there was a total lack of uniting building materials together on the site before the expiration of the permit. The defendant did not proceed with such diligence as to make it appear from a view of the site that an original intention to build had not been abandoned.

It is significant to note that the evidence is silent relative to the defendant's entering into a general contract for the construction of the building.

The ordinary and natural meaning of the words used in the county zoning ordinance, as well as the obvious intent of the Board of Supervisors, the county law-making body, when read along with the sections of the building code and considered in the light of the administrative practice of the building inspector as to when a building permit is required for the erection of a building, plus the inactivity on the site from October 21, 1957, through January 10, 1958, leads us to the conclusion that the defendant had not started construction before the expiration date of the building permit.

The judgment of the trial court, finding the defendant guilty of violating the county zoning ordinance by starting construction of the veterinary hospital without a permit, is supported by the evidence and the judgment is

*Affirmed.*